784 F.2d 258
 12 Soc.Sec.Rep.Ser. 298, Medicare&Medicaid Gu 35,311
James R. MATTINGLY, by his next friend, Mary Ann MATTINGLY,
and Mary Ann Mattingly, Leroy Jones and Mary
Jones, Plaintiffs-Appellants,
v.
Margaret HECKLER, in her official capacity as Secretary of
Health and Human Services, and Donald Blinzinger, in his
official capacity as Administrator of the Indiana Department
of Public Welfare, Defendants-Appellees.
 No. 85-1205.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 23, 1985.
Decided Feb. 21, 1986.
 
 William R. Leahy, Legal Services Organization, Indianapolis, Ind., for plaintiffs-appellants.
 Gary L. Shaw, Office of Atty. Gen., Indianapolis, Ind., Daniel E. Bensing, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.
 Before CUDAHY, ESCHBACH and COFFEY, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, James R. and Mary Ann Mattingly and Leroy and Mary Jones, appeal the judgment of the district court finding that the maintenance allowance established by the State of Indiana Department of Public Welfare ("IDPW") for a dependant spouse of an institutionalized Medicaid recipient is not in violation of 42 U.S.C. Sec. 1396a(a)(17) nor the Fifth and Fourteenth Amendments of the United States Constitution. We affirm.
 
 
 2
 * James Mattingly, the husband of Mary Ann Mattingly, has been a nursing home resident since 1979 and became eligible for and began receiving Medicaid assistance in July 1980. Mary Ann lives at home and is without an independent income; the Mattinglys' sole support is derived from James' pension from the Eli Lilly Company and his Social Security retirement benefits, which together provided a monthly income of $743.97 as of July 1980. When James began to receive Medicaid benefits in July 1980, the Indiana Department of Public Welfare instructed Mary Ann to pay $477.00 of their monthly income to the nursing home for James' care and informed her that she would be permitted to retain $28.50 as an allowance for James' clothing and personal needs and $238.00 as a maintenance allowance for her personal living expenses.[1] In June 1981, James and Mary Ann individually filed suit and also sought to be certified as class representatives for all other similarly situated individuals in their action against the United States Secretary of the Department of Health and Human Services ("HHS") and the Administrator of the Indiana Department of Public Welfare. The Mattinglys alleged that an HHS regulation, 42 C.F.R. Sec. 435.733, placing a ceiling on the amount the State of Indiana may deduct from an institutionalized Medicaid recipient's income as a maintenance allowance for the support of a spouse at home, and the IDPW regulation establishing a flat maintenance allowance of $238.00 for the non-institutionalized spouse violated 42 U.S.C. Sec. 1396a(a)(17). The Mattinglys further alleged that the HHS and IDPW regulations violated the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution in establishing an irrebuttable presumption that the income of the Medicaid recipient is available to pay for the recipient's medical care without making an individual factual determination that the Medicaid recipient has an income sufficient to defray the recipient's medical expenses. The Mattinglys finally alleged that Ind.Code 12-1-7-18.6 entitled the dependent spouse of an institutionalized Medicaid recipient to $5,000 per year as a maintenance allowance. The Mattinglys sought a declaratory judgment finding the HHS and IDPW regulations to be in violation of 42 U.S.C. Sec. 1396a(a)(17) and the Due Process Clause of the United States Constitution, and further requested the court to enjoin the enforcement of the regulations and order the defendants to determine the Mattinglys' available income in accordance with Ind.Code 12-1-7-18.6 for each month from July 1980 to the present.
 
 
 3
 Leroy Jones, like James Mattingly, is a nursing home patient and has been receiving Medicaid since January 1982. His wife, Mary Jones, does not receive Medicaid, lives at home and suffers from health problems serious enough to prevent her from caring for her husband or from working outside the home. When Leroy was placed in a nursing home, the Jones had a monthly income of $916.15 from their joint Railroad Retirement and their Social Security benefits (consisting of a $692.83 payment to Leroy and a $223.32 payment to Mary per month). In December 1981, Mary Jones applied for Medicaid benefits for Leroy and after a determination was made finding him eligible for Medicaid assistance, she was informed by the IDPW that she could retain a maintenance allowance of $264.70 from Leroy's income in addition to her own retirement benefits of $223.32 per month. Some months thereafter, in August 1982, the IDPW notified Mary Jones that they had made an error at the time of computing her husband's Medicaid benefits and advised her that she was entitled to retain only $41.38 from Leroy's income in addition to her personal retirement benefits for a total maintenance allowance of $264.70 per month. The IDPW directed that the remainder of Leroy's monthly income (less a $28.50 personal allowance for Leroy and a $51.60 deduction for Leroy's Blue Cross Blue Shield insurance coverage) be paid to the nursing home for his care. Mrs. Jones refused to pay the $182.00 increase in monthly payments to the nursing home, contending she was unable to meet her living needs on a maintenance allowance of only $264.70 monthly. In February 1983, Newcastle Health Care Center (where Leroy was confined as a patient) informed Mary that they intended to discharge Leroy due to her refusal to pay the increased amount to the nursing home as directed by the IDPW. At this time, the Jones (Mary and Leroy) moved to intervene in the Mattinglys' lawsuit, and sought the same declarative and injunctive relief, as well as seeking to enjoin the Newcastle Health Care Center from discharging Leroy. The district court granted the Jones' motion to intervene. Following an evidentiary hearing, the district court denied the Mattinglys' motion to certify the class, and dismissed the complaint of the Mattinglys and Jones, concluding that the challenged maintenance allowances for institutionalized Medicaid recipients were not in violation of 42 U.S.C. Sec. 1396a(a)(17) nor Indiana Code Sec. 12-1-7-18.6 and further that they did not violate the Fifth and Fourteenth Amendments of the United States Constitution. On appeal, the Mattinglys and Jones contend that the district court erred in holding that the HHS and IDPW regulations did not violate 42 U.S.C. Sec. 1396a(a)(17) and the Due Process Clause of the United States Constitution.[2]
 
 II
 A.
 
 4
 The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 79 Stat. 343, as amended, 42 U.S.C. Sec. 1396 et seq., "provide[s] federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Section 1902(a)(17) of the Act, 42 U.S.C. Sec. 1396a(a)(17) provides in pertinent part:
 
 
 5
 "A state plan for medical assistance must--
 
 
 6
 (17) include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ... as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance, or benefits, (C) provide for reasonable evaluation of any such income or resources...."
 
 
 7
 The Secretary of Health and Human Services has promulgated a regulation governing the treatment of the income of institutionalized Medicaid recipients in "209(b) states"[3] such as Indiana. The regulation provides:
 
 
 8
 "(a) The agency must reduce its payment to an institution, for services provided to an individual specified in paragraph (b) of this section, by the amount that remains after deducting the amounts specified in paragraph (c) of this section, from the individuals' income.
 
 
 9
 * * *
 
 
 10
 (c) The agency must deduct the following amounts, in the following order, from the individual's total income including amounts disregarded in determining eligibility:
 
 
 11
 (1) A personal needs allowance that is reasonable in amount for clothing and personal needs of the individual while in the institution....
 
 
 12
 (2) For an individual with only a spouse at home, an additional amount for the maintenance needs of the spouse. This amount must be based on a reasonable assessment of need but must not exceed the higher of--
 
 
 13
 (i) The more restrictive income standard established under Sec. 435.121; or
 
 
 14
 (ii) The medically needy standard for an individual;"
 
 
 15
 42 C.F.R. Sec. 435.733. As Indiana does not have a "medically needy" program,[4] the spousal maintenance deduction cannot exceed the more restrictive income standard set forth in 42 C.F.R. Sec. 435.121 for 209(b) states such as Indiana:
 
 
 16
 "(b) If an agency uses more restrictive requirements under this section--
 
 
 17
 (1) Each requirement may be no more restrictive than that in effect under the State's Medicaid plan on January 1, 1972, and no more liberal than that applied under SSI or an optional State supplement program that meets the conditions of Sec. 435.230;"
 
 
 18
 42 C.F.R. Sec. 435.121(b)(1).
 
 
 19
 The IDPW regulation governing the income eligibility of institutionalized Medicaid recipients, 470 IAC 9.1-3-11, currently mandates that the IDPW subtract $28.40 from the Medicaid recipient's monthly income for his personal needs, and if the Medicaid recipient has a non-institutionalized spouse, the IDPW must subtract an amount not to exceed $325.00[5] as a monthly maintenance allowance for the non-institutionalized spouse; the IDPW considers the Medicaid recipient's income remaining after deducting the personal needs allowance and the non-institutionalized spouse's maintenance allowance as available to defray the cost of the Medicaid recipient's medical care.[6]
 
 
 20
 We initially note that determining the amount that a Medicaid recipient must contribute to the cost of his institutional care involves two steps: (1) ascertaining the monthly income of the Medicaid recipient and of the spouse, and (2) subtracting from the total income Indiana's prescribed monthly allowances for the personal needs of the recipient and the living expenses of a non-institutionalized spouse. The controversy in the present case centers on the mechanical subtraction of the monthly spousal maintenance allowance designated by the State of Indiana.
 
 
 21
 The appellants contend that Indiana law limits a dependent spouse of an institutionalized Medicaid recipient to a specified maintenance allowance ($264.70 at the time of the trial court's evidentiary hearing, now $325.00) and does not give the spouse an opportunity to demonstrate that the spouse's actual needs exceed the prescribed monthly allowance. In contrast, the appellants emphasize that pursuant to Indiana Code Sec. 12-1-7-18.6, a non-institutionalized spouse with independent income in excess of $264.70 was permitted to retain up to $577.00 (now $623.14) of that income as a maintenance allowance and was allowed to demonstrate that his or her actual needs exceeded that level. According to the appellants, the Supreme Court decision in Schweiker v. Gray Panthers, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981), requires that "the standards must be reasonable or they do not comply with the Act," and the decisions of the Fifth Circuit in Norman v. St. Clair, 610 F.2d 1228 (5th Cir.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981), and the Seventh Circuit in Brown v. Smith, 662 F.2d 464 (7th Cir.1981) ("Brown II "), established that the reasonable standards requirement of the Medicaid Act prohibits the use of flat maintenance allowances that fail to reflect the needs of a particular spouse. The appellants conclude that the HHS and IDPW regulations mandating a $264.70 flat income maintenance allowance to the spouses of institutionalized Medicaid recipients are unreasonable because they force the recipient of the maintenance allowance, including Mary Ann Mattingly and Mary Jones, "to live below the poverty level and [do] not permit them to show that their needs are greater," and thus violate the provision of 42 U.S.C. Sec. 1396a(a)(17) mandating that a state plan for medical assistance must "include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan."
 
 
 22
 In Gray Panthers, the Supreme Court considered the validity of regulations governing the administration of Medicaid benefits in 209(b) states such as Indiana.[7] The regulation at issue in Gray Panthers, 42 C.F.R. Sec. 435.734,[8] described the circumstances in which the income of one spouse may be "deemed"[9] available to defray the medical costs of an institutionalized Medicaid recipient spouse. The respondent (Gray Panthers) argued that the challenged regulation impermissibly employed an "arbitrary formula" to impute a non-institutionalized spouse's income to an institutionalized Medicaid applicant and was therefore inconsistent with the Congressional intent of 42 U.S.C. Sec. 1396a(a)(17). This section of the Code provided that only income available to the applicant may be considered in establishing the Medicaid applicant's entitlement to and the amount of Medicaid benefits. Gray Panthers maintained that before states may consider the income of a spouse in calculating the Medicaid assistance to be provided to an institutionalized Medicaid applicant, the state must determine what portion of the non-institutionalized spouse's income actually is contributed to the Medicaid applicant. The Supreme Court in Gray Panthers disagreed, finding that Congress delegated to the Secretary of HHS broad authority to promulgate regulations defining eligibility requirements for Medicaid.
 
 
 23
 "Participating states must grant benefits to eligible persons 'taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant' (emphasis added).
 
 
 24
 In view of this explicit delegation of substantive authority, the Secretary's definition of the term 'available' is 'entitled to more than mere deference or weight.' Batterton v. Francis, 432 U.S. [416,] 426, 97 S.Ct. 2399, 2406 [53 L.Ed.2d 448]. Rather, the Secretary's definition is entitled to 'legislative effect' because, '[i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term.' Id. at 425, 97 S.Ct., at 2405. Although we do not abdicate review in these circumstances, our task is the limited one of insuring that the Secretary did not 'excee[d] his statutory authority' and that the regulation is not arbitrary or capricious. Id., at 426, 97 S.Ct. at 2406."
 
 
 25
 Gray Panthers, 453 U.S. at 43-44, 101 S.Ct. at 2639-2640. After reviewing 42 U.S.C. Sec. 1396a(a)(17) and its legislative history, the court concluded that "Congress ... demonstrated that 'deeming' is not antithetical to the general statutory requirement that Medicaid eligibility be based solely on resources 'available' to the applicant." Id. at 47-48, 101 S.Ct. at 2642-2643. The court further stated:
 
 
 26
 "Sound principles of administration confirm our view that Congress authorized 'deeming' of income between spouses. The administration of public assistance based on the use of a formula is not inherently arbitrary. There are limited resources to spend on welfare. To require individual determinations of need would mandate costly factfinding procedures that would dissipate resources that could have been spent on the needy."
 
 
 27
 Gray Panthers, 453 U.S. at 48, 101 S.Ct. at 2642 (citations omitted).
 
 
 28
 Norman, 610 F.2d 1228, a Fifth Circuit case decided before Gray Panthers, upheld the State of Mississippi's regulations reducing the benefits payable to Medicaid recipients in the amount a non-institutionalized spouse's income exceeded the $140.00 monthly maintenance allowance. The court found the State's regulations deeming that amount of money in excess of $140.00 per month to be available for the costs of the Medicaid recipient's institutional care to be consistent with 42 U.S.C. Sec. 1396a(a)(17), stating:
 
 
 29
 "The state may consider as available to the Medicaid applicant or recipient all income of the spouse in excess of those expenses necessary for the spouse to live in the community. We agree with the district court that the amount necessary for the spouse to live in the community shall be calculated on the basis of a reasonable and realistic estimate of the amount necessary to cover the costs of food, clothing, and shelter, which may vary in particular localities. Further, this estimate must take into consideration the reasonable costs of necessary medical care, reasonable expenses of employment and such other expenses as are reasonably determined by the state to be necessary for fulfillment of the spouse's basic living needs."
 
 
 30
 610 F.2d at 1241.
 
 
 31
 This court addressed a similar issue in Brown v. Stanton, 617 F.2d 1224 (7th Cir.1980) ("Brown I"), and in Brown v. Smith, 662 F.2d 464 (7th Cir.1981) ("Brown II"). The plaintiffs in Brown I challenged the State of Indiana's regulations deeming part of a non-institutionalized spouse's income and resources to be available to the Medicaid recipient spouse for the cost of the recipient's institutional care. This court issued two separate holdings dealing with the necessity of individual factual determinations and the appropriateness of deeming. "First, in determining the amount of income and resources belonging to the non-institutionalized spouse that is potentially available for the support of the institutionalized spouse, we held that an individualized factual determination of the non-institutionalized spouse's needs must be undertaken." Brown II, 662 F.2d at 466. With respect to the issue characterized as the "gravamen" of the appeal in Brown I, we held "it was 'inconsistent' with 42 U.S.C. Sec. 1396a(a)(17) for Indiana law to 'deem' actual contribution by the non-institutionalized spouse from available funds." Brown II, 662 F.2d at 466 (quoting Brown I, 617 F.2d at 1230-31). The Supreme Court vacated the judgment in Brown I and remanded to this court for further consideration in light of Gray Panthers. Stanton v. Brown, 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). On remand the court stated, "the Court did not reach our first holding requiring an individualized factual determination of the non-institutionalized spouse's needs in computing the potentially available funds subject to deeming." Brown II, 662 F.2d at 468. Further, in accordance with Gray Panthers, we vacated our second holding and ruled "that available funds of the non-institutionalized spouse, computed according to the criteria set forth by the district court and affirmed by this court, may be 'deemed' to the institutionalized spouse." Id.
 
 
 32
 In determining the extent of Medicaid benefits available to eligible individuals, states must "tak[e] into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." 42 U.S.C. Sec. 1396a(a)(17)(B). We note that the challenged HHS regulation, 42 C.F.R. Sec. 435.733, defines the amount of an institutionalized Medicaid recipient's income that is available to defray the costs of the Medicaid recipient's medical care; the regulation mandates that the state agency must reduce its payments to the institution in an amount equal to the institutionalized Medicaid recipient's income less a personal allowance and less a maintenance allowance to the non-institutionalized spouse. As the Supreme Court concluded in Gray Panthers:
 
 
 33
 "In view of this explicit delegation of substantive authority, the Secretary's definition of the term 'available' is entitled to more than mere deference or weight.' Rather, the Secretary's definition is entitled to 'legislative effect' because, '[i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term.' "
 
 
 34
 453 U.S. at 44, 101 S.Ct. at 2640 (citations omitted). Accordingly, as in Gray Panthers, our inquiry is limited to "ensuring that the Secretary did not 'exceed his statutory authority' and that the regulation is not arbitrary and capricious." Id.
 
 
 35
 Since the HHS regulation in issue determines the percentage of an institutionalized Medicaid recipient's income available to pay for the costs of the recipient's medical care, the Secretary has not exceeded the statutory authority conferred upon him by Congress in 42 U.S.C. Sec. 1396a(a)(17)(B) to prescribe standards governing the availability of a Medicaid recipient's income. The question remaining is whether the Secretary's regulation is arbitrary and capricious.
 
 
 36
 The HHS regulation before us, 42 C.F.R. Sec. 435.733, limits the amount of money a state may provide as a maintenance allowance to the non-institutionalized spouse of an institutionalized Medicaid recipient to the maximum monthly income that a single person may receive and still qualify for Medicaid benefits under the state program. For example, Indiana has established that a non-institutionalized individual living alone (without spouse, parents, or children) is eligible for Medicaid benefits if his income does not exceed $325.00 monthly; the HHS regulation requires that the monthly maintenance allowance established by Indiana for the non-institutionalized spouse of an institutionalized Medicaid recipient not exceed $325.00. The HHS regulation thus prevents the Medicaid program from granting more financial assistance to a non-Medicaid recipient (the non-institutionalized spouse) than the Medicaid program grants its own beneficiaries and treats all Medicaid recipients equally. In Schweiker v. Hogan, the Supreme Court recognized:
 
 
 37
 "In establishing public assistance programs, Congress often has determined that the Federal Government cannot finance a program that provides meaningful benefits in equal measure to everyone. Both [the] federal and [the] state funds available for such assistance are limited. In structuring the Medicaid program, Congress chose to direct those limited funds to persons who were most impoverished and who--because of their physical characteristics--were often least able to overcome the effects of poverty. The legislative history of the 1965 amendments makes clear that this group was not chosen for administrative convenience. 'These people are the most needy in the country and it is appropriate for medical care costs to be met, first, for these people.' "
 
 
 38
 457 U.S. 569, 590, 102 S.Ct. 2597, 2609, 73 L.Ed.2d 227 (1982). In preventing the subsidy of non-Medicaid recipients at a higher level than that provided to Medicaid beneficiaries, 42 C.F.R. Sec. 435.733 furthers the Congressional goal recognized in Hogan of directing limited Medicaid funds to meet the costs of medical care for those individuals who are the most needy; in the context of limited federal Medicaid funds and the federal guidelines governing the Medicaid program, increasing the amount of the spousal maintenance allowance would decrease the Medicaid funds available for the medical care of Medicaid recipients contrary to Congressional intent. We conclude that 42 C.F.R. Sec. 435.733 establishes a reasonable and proper method of allocating limited Medicaid funds to those most in need and may neither be classified as arbitrary nor capricious.
 
 
 39
 Turning to the Medicaid program as administered in the State of Indiana, we initially note that the present monthly maintenance allowance of $325.00 is in compliance with the mandate of 42 C.F.R. Sec. 435.733 that the spousal maintenance deduction not exceed the federal SSI eligibility level (presently $325.00). Further, the amount of the monthly maintenance allowance established by Indiana ($140.00 in 1974; $325.00 today) has always been within the permissible range established in 42 C.F.R. Sec. 435.733 and 42 C.F.R. Sec. 435.121(b)(1)[10] as the amount of the non-institutionalized spouse's maintenance allowance has never exceeded the SSI eligibility level for individuals nor has it fallen below the 1972 Indiana Medicaid eligibility level for individuals. The district court found that from 1974 to June 1982, "[t]he maintenance allowance for a spouse living at home alone in Indiana was tied to the benefit rates under the Supplemental Security Income program," and, "As of June 1983, the maintenance allowance had not been increased since June 1982 because of escalating Medicaid costs." Thus at the time of the evidentiary hearing, the cash payment to a single individual eligible for SSI benefits was $284.30 while the spousal maintenance allowance was $264.70. By the time of oral argument both the SSI cash payment to a single individual and the monthly spousal maintenance allowance were increased to $325.00. Since 1972, the monthly maintenance allowance provided to a non-institutionalized, non-Medicaid recipient spouse has been set at a level approximating the cash payment allowed to a single individual under SSI. As the purpose of the SSI program "is to assure that recipients' income is maintained at a level viewed by Congress as the minimum necessary for the subsistence of that individual," Whaley v. Schweiker, 663 F.2d 871, 873 (9th Cir.1981), we conclude that Indiana's monthly maintenance allowance of $325.00, set at the level of cash payments to a single individual eligible for SSI is both proper and reasonable.
 
 
 40
 The appellants next mount a reasonableness challenge to the prescribed spousal maintenance allowance of $325.00 per month on the basis of a distinction drawn in Indiana Code 12-1-7-18.6. According to the appellants, the Indiana maintenance allowance of $325.00 for a non-institutionalized spouse of an institutionalized Medicaid recipient is unreasonable due to the fact that the Indiana legislature has established a more generous standard of maintenance for a non-institutionalized spouse of a Medicaid recipient with personal income in excess of $325.00. In contrast to the flat allowance of $325.00 per month that a non-institutionalized spouse may retain from the income of an institutionalized Medicaid recipient spouse, Indiana Code 12-1-7-18.6 provides that a non-institutionalized spouse with personal income may retain up to $623.14 of that income, with the excess of that personal income over $623.14 "deemed" available for the Medicaid recipient spouse's care. In addition, if in the opinion of the spouse, there is some question as to whether that excess income is actually available to pay for the medical care of the Medicaid recipient, the spouse may request the county department of public welfare to determine, according to prescribed standards, what portion of the spouse's income must be contributed toward the cost of the Medicaid recipient's care and may appeal the county department's determination. The appellants conclude that Indiana's decision to shelter $325.00 of an institutionalized Medicaid recipient's income per month for the maintenance of a non-institutionalized spouse is unreasonable because the amount is less than that provided to a non-institutionalized spouse with independent income pursuant to I.C. Sec. 12-1-7-18.6 and there is no comparable provision for appealing the amount of the monthly maintenance allowance. A comparison of the regulation at issue in this case, 470 IAC 9.1-3-11, with the Indiana Code Sec. 12-1-7-18.6 reveals that they address different factual situations: 470 IAC 9.1-3-11 determines how much of a Medicaid recipient's income is available for his or her own care, while Indiana Code Sec. 12-1-7-18.6 establishes what amount of a non-institutionalized spouse's income is deemed to be available for the care of another (the institutionalized, Medicaid recipient spouse). When the income of a non-institutionalized spouse is "deemed" to be available for the institutional care of a Medicaid recipient spouse, the income is essentially being taken from the spouse for the needs of the other (the institutionalized Medicaid recipient spouse); but when determining the availability of an institutionalized Medicaid recipient's income, nothing is taken from the non-institutionalized spouse, rather $325.00 of the Medicaid recipient's income is sheltered for the living expenses of a non-institutionalized spouse. Further, the Indiana Medicaid program requires that the greater the monthly income a Medicaid recipient receives, the more income the recipient must contribute to the cost of the recipient's medical care. It is reasonable that any state, including Indiana, do all in its power to prohibit Medicaid recipients from shifting the entire cost of their medical care to the government, federal or state, and thus the action of the State of Indiana is both proper and reasonable in its allocation of limited Medicaid funds to require Medicaid recipients with greater income to pay for a larger portion of their medical care.
 
 
 41
 Finally, we address the appellants' contention that our holding in Brown II "prohibits the use of flat maintenance allowances" that do not consider "the particular needs of a particular spouse." An examination of Brown II reveals that it involved a factual situation distinguishable from the present case: Brown II addressed a State of Indiana regulation imposing an obligation on the non-institutionalized spouse of a Medicaid recipient to contribute a share of the spouse's income to defray the medical costs of the Medicaid recipient, while in this case, the Medicaid recipient already is under an obligation to pay for medical care, and the State of Indiana has sheltered a portion of the Medicaid recipient's income to provide a maintenance allowance for a non-institutionalized spouse. Accordingly, Brown II does not provide the rule of decision for this case, and we must determine whether 42 U.S.C. Sec. 1396a(a)(17) mandates individual factfinding determinations in establishing the amount of a Medicaid recipient's income to be sheltered for a non-institutionalized spouse. We look for guidance to the general principles set forth by the Supreme Court in Gray Panthers:
 
 
 42
 "The administration of public assistance based on the use of a formula is not inherently arbitrary. There are limited resources to spend on welfare. To require individual determinations of need would mandate costly factfinding procedures that would dissipate resources that could have been spent on the needy."
 
 
 43
 453 U.S. at 48, 101 S.Ct. at 2642 (citations omitted). In light of these guiding principles, we conclude that individual factfinding procedures would dissipate the limited resources of the Medicaid program in the increased administrative expense of providing such procedures, thus reducing the amount of funds available to Medicaid recipients, and we hold that individual determinations of need are unnecessary in establishing the monthly maintenance allowance for the non-institutionalized spouse of a Medicaid recipient.
 
 B.
 
 44
 The appellants also contend that the defendants' use of an irrebuttable flat maintenance allowance for the support of a dependent non-institutionalized spouse denies the spouse due process of law in establishing the monthly maintenance allowance without providing the spouse an opportunity to present facts relevant to the spouse's need. The appellants state that "the obligation of support between husband and wife is one of the most fundamental obligations recognized in our system of law" and that the State of Indiana has provided no due process protection to Mary Ann Mattingly and Mary Jones' interest in receiving financial support from their husbands. According to the appellants, "The present case ... applies an irrebuttable presumption to a fundamental aspect of family life, the duty of one spouse to support the other. The welfare officials' application of an irrebuttable formula to the amount of support a husband may provide to his wife (or vice versa) is an undue interference in family life and is a type of intrusion which is not entitled to the usual judicial deference to legislative discretion." The appellants acknowledged the following language of the Supreme Court in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975):
 
 
 45
 "A noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status, Dandridge v. Williams [90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) ], supra, though of course Congress may not invidiously discriminate ... on the basis of criteria which bears no relation to a legitimate legislative goal."
 
 
 46
 422 U.S. at 772, 95 S.Ct. at 2470. Yet the appellants attempt to distinguish their case from Salfi in arguing that they "are not seeking to become eligible for some public benefit, they are seeking the support of their husbands which they planned their lives around."
 
 
 47
 Initially, the appellants have failed to provide any statutory authority, much less case law support, for their assertion that "the obligation of interspousal support is one of the fundamental privacy rights recognized under the Constitution." Further we are not persuaded by the appellants' claim that they "are not seeking to become eligible for some public benefit." The appellants are obviously attempting to increase the amount of Medicaid assistance that their respective husbands receive from the federal government and the State of Indiana. The appellants apparently ignore the fact that an increase in Medicaid assistance to their husbands would reduce the amount their husbands' must contribute to the cost of medical care and thus would result in an increase in their personal disposable income. They also ignore the fact that but for the Medicaid assistance they are currently receiving, the entire cost of their husbands' medical care would have to be paid out of their limited income. Accordingly, the appellants' attempt to obtain increased Medicaid assistance is nothing more than a "noncontractual claim to receive funds from the public treasury [which] enjoys no constitutionally protected status." Salfi, 422 U.S. at 772, 95 S.Ct. at 2470. As we stated in Cozart v. Winfield, 687 F.2d 1058 (7th Cir.1982), "the Supreme Court in Salfi abandoned the irrebuttable presumption doctrine in the area of welfare eligibility requirements. This court will not breathe life into this discredited doctrine." Id. at 1062. We thus reject the appellants' claim that the flat monthly maintenance allowance for non-institutionalized spouses established by Indiana raises an unconstitutional irrebuttable presumption.
 
 
 48
 Since we conclude that Indiana's prescribed maintenance allowance of $325.00 per month fails to constitute an irrebuttable presumption, we must determine whether a rational basis exists for Indiana's designation of a flat $325.00 monthly maintenance allowance for a non-institutionalized spouse. "Social welfare legislation, by its very nature, involves drawing lines among categories of people, lines that necessarily are sometimes arbitrary. This court has consistently upheld the constitutionality of such classifications in federal welfare legislation where a rational basis existed for Congress' choice." Califano v. Aznavorian, 439 U.S. 170, 174, 99 S.Ct. 471, 473, 58 L.Ed.2d 435 (1978).
 
 
 49
 "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."
 
 
 50
 Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960). "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)).[11] We agree with the conclusion of the district court that "inasmuch as the purpose of Medicaid is to cover the cost of medical care for eligible individuals, it is rational to provide a flat maintenance allowance for a spouse at home, rather than factor in the subjective needs of an individual who is not the direct beneficiary of the Medicaid program [the non-institutionalized spouse]." The thousands of individualized factfinding procedures that would be necessary when weighing and considering the subjective needs of each non-institutionalized spouse seeking an increase in the monthly maintenance allowance would unnecessarily tax the federal government's limited Medicaid funds for the administrative costs of such procedures and would be a needless waste of the taxpayers' dollar intended for medical assistance. Thus, we hold that the use of a flat maintenance allowance to provide for the needs of the non-institutionalized spouse of a Medicaid recipient does not violate the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.
 
 III
 
 51
 The judgment of the district court is AFFIRMED.
 
 CUDAHY, Circuit Judge, dissenting:
 
 52
 Regrettably, this opinion enters another chapter in the saga of impoverishment that plagues the elderly sick. Here two Indiana pensioners, James Mattingly and Leroy Jones, have been confined to nursing homes. The state of Indiana, at the behest of the United States government, has allocated from the family income to the nursing home (and to the patient) all but $238.00 per month in the case of Mattingly and all but $264.00 per month in the case of Jones. These extremely meager residual sums were deemed sufficient by the authorities to sustain life for their wives left in the outside world. Subsequently, these maintenance allowances were increased to $325.00 per month. The controlling statute, of course, requires that the evaluation of income and resources available to the nursing homes be "reasonable." 42 U.S.C. Sec. 1396a(a)(17).
 
 
 53
 The appellants' principal argument on reasonableness contrasts the $325.00 a wife on the outside may retain from the income of her husband in a nursing home with the $623.14 per month which an Indiana husband on the outside may retain if he--and not his institutionalized spouse--is the income recipient. The majority finds this gross disparity "reasonable." It argues essentially that it is fair to take a larger proportion of an institutionalized spouse's income for his own care (leaving his spouse much less) and to allocate a much lower proportion of a non-institutionalized spouse's income to the care of his sick wife (leaving him much more). The rationale for allocating a $325.00 maintenance allowance to the spouse who does not work outside the home is that she should not "take" more from the government than do the recipients of cash assistance under the SSI program. This approach suggests an antiquated view of family income: a spouse who does not have an income becomes an object of charity, relegated to subsist below the poverty level, instead of an equal contributor to the family receipts.
 
 
 54
 This disparity alone leads me to believe the determinations here are unreasonable as well as arbitrary. Certainly it is for administrators to exercise broad discretion in matters such as this one. But I think we are not required to tolerate what appear to be unconscionable results--inconsistent with the concept that husband and wife receive their pensions as a family unit. The disparities that exist here indicate an outcome which is arbitrary and unfair and should not be approved.
 
 
 55
 I therefore respectfully dissent.
 
 
 
 [1]
 At the time of the district court's hearing in June 1983, the Indiana Department of Public Welfare had revised its standards and provided a monthly maintenance allowance of $264.70, and at the time of oral arguments in this case, the allowance had been further increased to $325.00 per month. This revision had the effect of reducing the amount the Mattinglys contributed to James' medical care while increasing the payment the Indiana Department of Public Welfare remitted for James' care
 
 
 [2]
 Appellants also assert for the first time that the challenged regulations violate the Equal Protection Clause. The plaintiffs-appellants failed to present their equal protection claim to the district court and thus we do not address it as "it is a well-established general proposition that 'a litigant cannot present to [the Circuit Court of Appeals] as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide.' " United States ex rel. Cole v. Lane, 752 F.2d 1210, 1219 (7th Cir.1985) (quoting Holleman v. Duckworth, 700 F.2d 391, 394-95 (7th Cir.1983)); International Association of Bridge, Structural & Ornamental Ironworkers, Local Union No. 103 AFL-CIO v. Higdon Construction Company, Inc., 739 F.2d 280, 283 (7th Cir.1984)
 
 
 [3]
 When originally enacted, the Medicaid program required states to provide medical assistance to the "categorically needy"--individuals who received cash payments under four joint federal/state welfare programs administered by the states: Old Age Assistance, 42 U.S.C. Sec. 301 et seq. (1970 ed.); Aid to Families with Dependent Children, Sec. 601 et seq.; Aid to the Blind, Sec. 1201 et seq.; and Aid to the Permanently and Totally Disabled, Sec. 1351 et seq. In 1972 Congress replaced three of these four programs with a new federal program entitled Supplementary Security Income for the Aged, Blind and Disabled ("SSI"), 42 U.S.C. Sec. 1381 et seq., Pub.L. No. 92-603, 86 Stat. 1465. (Only Aid to Families with Dependent Children remained as originally established, and administered by the states.) In many states, the establishment of the Federal SSI program increased the number of individuals eligible for categorical assistance in comparison to the number of individuals eligible under the prior state administered programs
 "The expansion of general welfare accomplished by SSI portended increased Medicaid obligations for some States because Congress retained the requirement that all recipients of categorical welfare assistance--now SSI--were entitled to Medicaid. Congress feared that the states would withdraw from the cooperative Medicaid program rather than expand their Medicaid coverage in a manner commensurate with the expansion of categorical assistance."--This plan has become known as the Sec. 209(b) option.
 Schweiker v. Gray Panthers, 453 U.S. 34, 38, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460 (1981); see Pub.L. No. 92-603 Sec. 209(b), 42 U.S.C. Sec. 1396a(f). Under the 209(b) option, states could elect to provide Medicaid assistance only to "those individuals who met the eligibility requirements for the state administered programs on January 1, 1972, rather than determining Medicaid eligibility according to the standards of the new SSI program." Norman v. St. Clair, 610 F.2d 1228, 1231 (5th Cir.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981). Indiana has provided Medicaid assistance pursuant to Sec. 209(b) and thus is a "209(b) state."
 
 
 [4]
 In addition to requiring states to provide Medicaid assistance to the categorically needy, the Medicaid Act permitted states to offer assistance to the " 'medically needy'--persons lacking the ability to pay for medical expenses, but with incomes too large to qualify for categorical assistance." Gray Panthers, 453 U.S. at 37, 101 S.Ct. at 2636
 
 
 [5]
 According to 470 IAC 9.1-3-11, the maintenance allowance is calculated by subtracting the non-institutionalized spouse's income from $325.00. Thus, if the non-institutionalized spouse has personal income of $200.00, the maintenance allowance from the Medicaid recipient spouse's income would be $125.00. A non-institutionalized spouse with monthly income in excess of $325.00 receives no maintenance allowance from the Medicaid recipient's income
 
 
 [6]
 The Indiana Code, Sec. 12-1-7-18.6, also provides that if the spouse of an institutionalized Medicaid recipient has income in excess of $623.14 per month, the monthly income exceeding $623.14 is considered to be available for payment of medical care of the institutionalized Medicaid recipient. If the spouse with personal income in excess of $623.14 believes that that excess is not actually available to pay for the medical care of the Medicaid recipient, the spouse may request the county department of public welfare to determine according to prescribed standards, what portion of the spouse's income is actually available to pay for the Medicaid recipient's medical care. Further, the spouse may appeal the county department's determination in accordance with Indiana statutory procedures
 
 
 [7]
 As noted above, "209(b) states" provide Medicaid assistance to those who met the state eligibility requirements for Medicaid as established on January 1, 1972 rather than for all individuals who now qualify for federal SSI assistance. See supra note 3
 
 
 [8]
 The regulation provides, in pertinent part:
 "The agency must consider the income and resources of spouses and parents as available to the individual in the manner specified [for SSI states] or in a more extensive manner, but not more extensive than the requirements in effect under the Medicaid plan on January 1, 1972."
 
 
 [9]
 Some states, including Indiana, have adopted a plan referred to as deeming that considers a spouse's income in determining an applicant's Medicaid eligibility and benefits. This is determined after the state calculates the amount necessary for the basic living expenses of the spouse and any of the spouse's remaining income is "deemed" to be available to the applicant for the cost of his or her medical care. See Gray Panthers, 453 U.S. at 37-38, 101 S.Ct. at 2636-2637
 
 
 [10]
 The regulation requires that Medicaid eligibility levels for 209(b) states "be no more restrictive than that in effect under the state's Medicaid plan on January 1, 1972, and no more liberal than that applied under SSI...." 42 C.F.R. Sec. 435.121(b)(1)
 
 
 [11]
 Although the court in Dandridge was addressing an equal protection challenge to state welfare legislation, "a classification that meets the test articulated in Dandridge is perforce consistent with the due process requirement of the Fifth Amendment." Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971)