. Donald H. MARKWARDT et al.,
petitioners, Appellants,

v.

STATE of Minnesota, WATER RE-
SOURCES BOARD, Respondent, Peti-
tioners in the Matter of the Establish-
ment of the Clearwater River Watershed
District, Respondents.

No. 46913.

Supreme Court of Minnesota.

May 13, 1977.

Holmes Eustis Kircher & Graven, and David L. Graven, Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Stephen Shakman, Sp. Asst. Atty. Gen., St. Paul, for State, Water Res. Bd.

Arthur, Chapman & Michaelson, and Lindsay G. Arthur, Jr., Minneapolis, for respondents.

Heard before MacLAUGHLIN, SCOTT and STAHLER, JJ., and considered and decided by the court en banc.

THOMAS J. STAHLER, Justice.*

Appellants, Donald H. Markwardt and Marvin Sommers, property owners in the affected area, petitioned district court for review pursuant to Minn.St. 15.0424 of an order of the Minnesota Water Resources Board (board) establishing the Clearwater River Watershed District (watershed district). The petitioners in the matter of the establishment of the watershed district were allowed to intervene in the present action.[1] This is an appeal from a judgment of the district court affirming the order of the board. We affirm.

On July 3, 1974, a petition requesting the creation of a watershed district for the Clearwater River system was filed with the board by the intervenors. The primary purpose of the proposed watershed was to control pollution of the Clearwater River system, which provides drainage of portions of Stearns, Wright, and Meeker Counties. Pursuant to Minn.St. 112.37, subd. 3(3), the director of the Division of Waters, Soils and

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

1. The petitioners in the matter of the establishment of the Clearwater River Watershed District initiated the proceeding before the board and are not to be confused with appellants in the instant action who petitioned for review of the board's decision.

Minerals (director) filed a preliminary report with the board on August 30, 1974, which recommended establishment of the watershed if "coordinated management will be impossible without the establishment of the district and * * * will be possible if the watershed district is established."

The board held public hearings on the matter on October 9, 1974, and November 25, 1974. Testimony introduced at these hearings established that a serious pollution problem existed, a fact which appellants do not contest. Dr. Keith Knutson, an aquatic biologist, testified at length regarding the poor water quality in the area of the proposed watershed, explaining the condition was due most significantly to inadequately treated sewage, but other factors such as industrial waste, runoff from agricultural lands, and feed lots contributed to the pollution. Knutson and others testified regarding the difficulties encountered by the existing governmental units in dealing with the water problem, particularly the difficulty in obtaining financing. The evidence also included a Pollution Control Agency (PCA) report prepared in 1971. The PCA report recommended that local governments take steps to alleviate the pollution problem in the Clearwater River system and that "[c]onsideration should be given to formation of a local organization, such as a watershed district, to be responsible for the restoration and maintenance of the Fairhaven Dam." This dam was rebuilt through the efforts of local citizens after the PCA report was issued but before the board's hearings on establishing a watershed district. Opponents of the watershed district introduced testimony to the effect that the sewage treatment problem could be cured by existing local governments through adequate chlorination; that a creamery in Watkins, which was a possible source of industrial pollution, was in the process of improving its disposal system; and that other local government efforts in the nature of zoning and septic tank regulations were being undertaken.

On April 9, 1975, the board issued an order establishing the watershed district, together with findings of fact and conclusions of law in support thereof. The board found that current water problems in the Clearwater River system were the cause of loss of recreational uses, erosion, sedimentation, poor water quality, and attendant public health problems as detailed in the testimony of Knutson and the 1971 report of the PCA. The board also found that coordinated public water management was lacking in the area at Federal, state, and local levels and concluded that the public welfare, the public interest, and the purposes of the Minnesota Watershed Act, Minn.St. c. 112, would be subserved by the establishment of the proposed watershed district.

■ 1. Appellants' first argument is that the board lacked statutory authority to create a watershed district for the sole purpose of pollution control. Minn.St. 112.36 provides in part:

"A watershed district may be established for any or all of the following conservation purposes:

"(1) Control or alleviation of damage by flood waters;

"(2) Improvement of stream channels * * *;

"(3) Reclaiming or filling wet and overflowed lands;

"(4) Providing water supply for irrigation;

"(5) Regulating the flow of streams * * *;

"(6) Diverting or changing watercourses * * *;

"(7) Providing and conserving water supply for domestic, industrial, recreational, agricultural, or other public use;

"(8) Providing for sanitation and public health and regulating the use of streams, ditches, or watercourses for the purpose of disposing of waste;

"(9) Repair, improve, relocate, modify, consolidate, and abandon, in whole or in part, drainage systems * * *;

"(10) Imposition of preventive or remedial measures for the control or alleviation of land and soil erosion and siltation of watercourses or bodies of water affected thereby;

"(11) Regulating improvements by riparian landowners of the beds, banks, and shores of lakes, streams, and marshes by permit or otherwise in order to preserve the same for beneficial use."

The statute explicitly states that a watershed district may be established for *any* of the enumerated purposes. Cf. *Adelman v. Onischuk*, 271 Minn. 216, 135 N.W.2d 670, certiorari denied, 382 U.S. 108, 86 S.Ct. 257, 15 L.Ed.2d 192 (1965), which involved a watershed established for the purpose of maintaining a barge channel. If any one of the purposes enumerated in § 112.36 will support the creation of this watershed district, the board did not exceed its statutory authority.

Substantial evidence introduced at the hearings indicated that the pollution to the Clearwater River system was caused largely by inadequately treated sewage. Improving sewage treatment falls directly within § 112.36(8). It seems clear to us that this subsection alone would support the creation of the district. However, some of the other subsections do likewise. Subsection (7) relates to conserving water supply for, among others, recreational use. There are a number of resorts and summer homes within this district, and the lakes in the district are used for recreational purposes. Subsection (11) allows the district to regulate improvements by riparian landowners by permit or otherwise. Some of the pollution in this case was caused by inadequate septic tanks. There was also evidence of pollution caused by soil erosion, which comes within subsection (10).

Minn.St. 112.36 does not specifically mention pollution control as a purpose for which a watershed district may be created. There are conceivably certain forms of water pollution which would not justify the creation of a watershed district. The evidence in this case, however, indicates that the pollution is caused by factors which a watershed district may alleviate. The establishment of the watershed district therefore did not exceed the board's statutory authority.

■ 2. Appellants also argue that the board's order requires special assessments to be made which will not be used for local improvements, in violation of Minn.Const. art. 10, § 1. The argument is based on two premises: (1) That the watershed district's primary source of income under the statute is special assessments, which will inevitably be made in order to achieve pollution control; and (2) that any project undertaken for the purpose of pollution control will not constitute a local improvement. Since the district has in fact made no assessments, it is clear that this argument presents a hypothetical controversy, which we will not decide. *Seiz v. Citizens Pure Ice Co.*, 207 Minn. 277, 290 N.W. 802 (1940). Minn.St. 112.801 provides aggrieved parties an effective procedure for judicial review of the amount of benefits determined or the amount of damages allowed. The creation of a watershed district in and of itself creates no justiciable controversy with respect to such property rights.

■ 3–4. Appellants lastly claim that the board acted arbitrarily and capriciously in creating the watershed district. The scope of review of the action of an administrative agency is governed by Minn.St. 15.0425. A court will not interfere with the conclusions of such agency unless it appears that the agency has violated a constitutional provision, has exceeded its statutory authority or jurisdiction, has followed an unlawful procedure, has proceeded on an erroneous theory of law, has taken an action without substantial evidence in support thereof, or has acted arbitrarily or capriciously so that its determination represents its will and not its judgment. *Bryan v. Community State Bank*, 285 Minn. 226, 172 N.W.2d 771 (1969). Upon judicial review of an action taken by an administrative agency, the party seeking review has the burden of proving that the conclusions of such agency violate one or more of the provisions of § 15.0425. *Buffalo Creek Watershed Dist. v. Minn. Water Resources Bd.*, 291 Minn. 504, 188 N.W.2d 923 (1971).

■ Appellants contend that the board acted arbitrarily and capriciously in ignoring reports by the PCA and the director.

The PCA report suggested the creation of a watershed district for the purpose of rebuilding the Fairhaven dam, a project which has now been completed. Appellants seek to draw the negative inference that if the PCA thought a watershed district was appropriate for reconstructing the dam, it would not be appropriate for any other purpose. We fail to see how such an inarticulated inference can constitute a "recommendation" of the PCA. The director's report neither categorically recommended the watershed nor categorically opposed it. It merely stated that the watershed should be established if coordinated management of the area would be impossible without the district and would be possible with it. Appellants allege that by making no specific findings on this point, the board ignored the director's report. However, the board stated in its findings of fact that "[n]o one existing agency or governmental unit has demonstrated the capability to coordinate the management [of the district]." It is true that there is no finding that the watershed district will be able to coordinate the management. However, Minn.St. 112.39, subd. 3,[2] requires only that the board find that the watershed district is in the public interest and that it will effectuate the purpose of the act. The board explicitly so found, and we believe that implicit in the findings of fact made by the board is the conclusion that coordinated management of the district will be possible. While the specific finding urged by appellants is not required by Minn.St. 112.39, subd. 3, or by

2. Minn.St. 112.39, subd. 3, provides in part: "Upon the hearing if it appears to the board that the establishment of a district as prayed for in the nominating petition would be for the public welfare and public interest, and that the purpose of this chapter would be subserved by the establishment of a watershed district, the board shall, by its findings and order, establish a watershed district * * *."

3. Minn.St. 15.0422 provides: "Every decision and order adverse to a party of the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by a statement of the reasons therefor. The statement of reasons shall consist of a concise statement of the conclusions upon each contested issue of fact nec-

Minn.St. 15.0422,[3] we think it would be a good practice for the board to make such a finding in future cases.

■ 5. Even if we were to assume that the board did not follow the recommendations of the PCA and the director, reversal is not indicated. The board, having received the reports of the PCA and the director in evidence, is not required by law to be guided solely by such reports, but must consider the evidence in its entirety as a basis for its action. Having reviewed the entire record, we are convinced that there was a reasonable basis for the board's action. The judgment of the district court is therefore affirmed.

Affirmed.

essary to the decision. Parties to the proceeding shall be notified of the decision and order in person or by mail. A copy of the decision and order and accompanying statement of reasons together with a certificate of service shall be delivered or mailed upon request to each party or to his attorney of record."

In *Bryan v. Community State Bank*, 285 Minn. 226, 232, 172 N.W.2d 771, 775 (1969), we held a mere conclusion that there was "reasonable public demand" for a bank was not sufficient to comply with Minn.St. 15.0422. In the instant case, however, the board made detailed and extensive findings, and we will not reverse simply because it failed to make the finding suggested by petitioners.