Dwight RINDAHL, et al., Appellants,

v.

**ST. LOUIS COUNTY WELFARE BOARD, Minnesota Department of Human Services, Respondents.**

No. CX–88–1514.

Court of Appeals of Minnesota.

March 28, 1989.

Leslie E. Beiers, Legal Aid Service of Northeastern Minnesota, Duluth, for Dwight Rindahl, et al.

Alan L. Mitchell, St. Louis County Atty., T. Frank Norton, Asst. St. Louis County Atty., Duluth, for St. Louis County Welfare Bd.

Hubert H. Humphrey, III, Atty. Gen., Patricia A. Sonnenberg, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Dept. of Human Services.

Considered and decided by HUSPENI, P.J., and CRIPPEN and KALITOWSKI, JJ., without oral argument.

## OPINION

HUSPENI, Judge.

Appellants Dwight and Rita Rindahl appeal from the trial court's affirmance of the Commissioner's ruling that all of appellants' income is to be attributed to Dwight Rindahl only, leaving Rita Rindahl with minimal income while Dwight Rindahl is institutionalized. We are required to affirm.

## FACTS

Appellants were married in 1953. For the first year of the marriage Rita Rindahl worked outside the home, but since then she has been a "traditional homemaker." During the marriage Dwight Rindahl completed his education and taught for 25 years in a northern Minnesota public school system. In 1977 he was forced to retire by Parkinson's disease. Because of the severity of his condition, he has required constant medication and around-the-clock care for the past seven years. Rita Rindahl personally provided this care in the couple's home until June 29, 1987, when Dwight Rindahl was placed in a nursing home. His institutionalization was at least partially a result of the physical and psychological toll his required care was taking on his wife.

Appellants' monthly income is $1,525.61 and consists of Dwight Rindahl's pension ($448), his disability insurance ($228.61) and his Social Security ($789). Rita Rindahl has no independent source of income and none of Dwight Rindahl's income is assignable to her. While Dwight Rindahl is institutionalized, his monthly medical expenses exceed $2,000 and Rita Rindahl's monthly expenses are approximately $1,078.

In granting Medical Assistance, the St. Louis County Welfare Board applied the "name on the instrument" rule and concluded that all appellants' income was attributable only to Dwight Rindahl because each check was in his name. Under the applicable federal and state Medical Assistance guidelines, Dwight Rindahl was allowed a "personal needs allowance" of $40 and Rita Rindahl was allowed a monthly "maintenance allowance" of $402. The remainder of the money was used to meet Rita Rindahl's insurance expenses and Dwight Rindahl's health care costs.

On appeal, appellants argue that $402 a month is not enough for Rita Rindahl to live on, and that under the state's marital property division statutes, she should have been awarded half of her husband's income as a maintenance allowance. The transcript of the hearing before the referee makes clear that the St. Louis County Welfare Board was aware of, and sympathetic to, Rita Rindahl's predicament. The county's eligibility specialist even recommended that the referee allow an additional amount of income for Rita Rindahl's situation. However, this suggestion was made without supporting authority and the referee, noting that the $402 a month "maintenance allowance" was not alleged to be incorrect, refused. Also, the referee determined that the state's marital property statutes were not applicable to award Rita Rindahl half of Dwight Rindahl's income. The referee stated:

Mrs. Rindahl is in a rather unfortunate situation here, but the [Medical Assistance] law must be upheld. The County Agency must be affirmed in its decision that the spousal allocation of $402 is the correct allocation.

The Commissioner affirmed the agency by adopting the referee's recommendation.

On November 24, 1987, the Rindahls appealed the Commissioner's decision to the district court. A week later Rita Rindahl removed her husband from the nursing home because of lack of funds. A hearing was conducted in district court on June 2, 1987, and that court affirmed the Commissioner the next day. The district court's affirmance again was sympathetic to appellants, but noted that the marital property statutes were not applicable and that although Rita Rindahl was in an unfortunate situation, the relevant statutes did not leave the court a viable option to reverse

the Commissioner. Appellants seek relief in this court.

## ISSUES

1. Was the attribution of all of appellants' income to Dwight Rindahl contrary to federal law?

2. Was the attribution of all of appellants' income to Dwight Rindahl arbitrary or capricious?

3. Is Minnesota marital property law applicable to entitle Rita Rindahl to a larger portion of appellants' income?

## ANALYSIS

Appellants challenge the attribution of all of their income to Dwight Rindahl. Generally, when reviewing an agency determination,

[t]he review shall be confined to the record * * * [and] [a]ppeal from the district court determination may be taken to the court of appeals as in other civil cases.

Minn.Stat. § 14.68 (1986). On appeal,

the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1986).

An agency finding is arbitrary and capricious when it represents its will and not its judgment.

*Peoples Natural Gas Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 348, 351 (Minn.Ct.App.1983), *pet. for rev. denied* (Minn. Apr. 24, 1984) (citation omitted). Generally, the substantial evidence

test is used to review factual findings of an agency. *Id.*

When inquiring into the record, an appellate court

independently reviews the agency's decision without according any special deference to the district court's review. * * * Furthermore, because of an agency's expertise, its order is presumptively valid and the reviewing court should show deference to conclusions involving its expertise.

*Minnesota Power & Light Co. v. Minn. Public Utilities Commission,* 342 N.W.2d 324, 329 (Minn.1983) (citations omitted).

Also, if upon review of the record it appears that the agency has taken a

"hard look" at the salient problems * * * the court should exercise restraint and affirm, even if it might have reached a different conclusion had it been the factfinder or policymaker.

*Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977). Lastly,

Upon judicial review of an action taken by an administrative agency, the party seeking review has the burden of proving that the conclusions of such agency violate one or more of the provisions of [§ 14.69].

*Markwardt v. State, Water Resources Board,* 254 N.W.2d 371, 374 (Minn.1977).

## MEDICAID

The Medicaid program was enacted to provide

federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons. Although participation in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the requirements of [the federal statute].

*Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Generally, the federal statutory scheme and the explanatory regulations promulgated by the Secretary of Health and Human Services describe the requirements a state program must meet in order to receive federal reimbursement. *See* 42 U.S.

C.A. § 1396a-s (West Supp.1988). State Medical Assistance statutes and their accompanying rules then are used to determine eligibility and actually implement the program. Provision is made under the regulations to permit the noninstitutionalized spouse to receive a monthly maintenance allowance equal to the federal Medical Assistance eligibility level (here $402). Also, consistent with federal regulations, Minnesota's Medical Assistance Law provides that when an individual resides in a nursing home, that individual's income which exceeds a "personal needs allowance" (here $40) must be applied to the cost of institutionalized care. Minn.Stat. § 256B.35 (1986). Minnesota's continued receipt of federal funds depends upon Minnesota's continuing compliance with federal regulations. If compliance fails, Minnesota would risk the possible sanctions addressed in *In re Estate of Turner*, 391 N.W.2d 767, 769 (Minn.1986):

> Any state receiving [federal] funds that changes its medical assistance plan such that there is a failure by the state to comply with any provision in the [federal] statute may have federal funding cut off.

*See also* 42 U.S.C.A. § 1396c (1983). Therefore, in considering appellants' arguments regarding the financial hardship which they have unquestionably encountered as a result of Dwight Rindahl's hospitalization, we must look not only at the Minnesota statutes and rules but also the relevant federal law and the Secretary's regulations in order to determine whether a rationale can be developed under which relief may be granted.

### I.

■ A. In determining to whom income is attributable, the Secretary of Health and Human Services uses the "name on the instrument rule":

> [which] requires that a Medicaid applicant's eligibility for benefits be based on

the amount of money that the applicant receives each month in his or her own name.

*State of Washington v. Bowen*, 815 F.2d 549, 552 (9th Cir.1987). Appellants argue that this rule is an overbroad interpretation of the Medicaid condition requiring that state eligibility determinations

> provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the secretary, *available* to the applicant or recipient. * * *

42 U.S.C.A. § 1396a(a)(17)(B) (emphasis added). Also, 42 U.S.C.A. § 1396a(a)(17)(C) requires state plans to "provide for reasonable evaluation of any such income or resources." Appellants argue that the "name on the instrument" rule embodies an unduly expansive interpretation of the word "available" and that automatic attribution of all of appellants' household income to Dwight Rindahl precludes the "reasonable evaluation" of income required under 42 U.S.C.A. § 1396a(a)(17)(C). Unfortunately, we must disagree.

Case law which has construed section 1396a(a)(17)(C) does not assist appellants because it involves disagreements regarding an asset's dollar value or the method used in arriving at that dollar value. *See Harris v. Lukhard*, 547 F.Supp. 1015 (W.D.Va.1982), *aff'd.* 733 F.2d 1075 (4th Cir.1984). Here, valuation is not in issue. The only assets in dispute are the checks made out to Dwight Rindahl. Because their dollar value is fixed and easily determinable, there can be no real question about reasonable valuation of these assets under section (C).

■ B. We are cognizant of the potential impact upon this case of footnote 21 in *Schweiker v. Gray Panthers*, 453 U.S. 34, 49, 101 S.Ct. 2633, 2643, 69 L.Ed.2d 460 (1981).[1] However, the concept of "contributing spouse" enunciated in *Schweiker* is meaningful only in connection with the con-

---

1. Footnote 21 reads in pertinent part:
   [This case does not] decide whether state plans that set aside inadequate sums for the *contributing* spouse are consistent with other provisions of [42 U.S.C.A. § 1396a(a) ], such as the requirement that states "reasonabl[y] evaluat[e] * * * income or resources." 42 U.S.C.A. § 1396a(a)(17)(C).
   *Schweiker*, 453 U.S. at 49 n. 21, 101 S.Ct. at 2643 n. 21 (emphasis added).

cept of "deeming." In discussing this latter concept:

> The regulations describ[e] the circumstances in which the income of one spouse may be "deemed" available to the other. * * * "deeming" is conducted in the following manner: When the applicant and his spouse live in the same household, the spouse's income and resources always are considered in determining eligibility, "whether or not they are actually contributed."

*Schweiker* at 39, 101 S.Ct. at 2638 (quoting 42 C.F.R. § 435.723(b) (1980)).

If Rita Rindahl were the institutionalized spouse in this case, Dwight Rindahl would be considered the contributing spouse by virtue of his status as wage earner and the fact that his name is on the checks received as income. He would be entitled to invoke the concept of "deeming" and under present eligibility guidelines would be permitted to keep in excess of $900 per month for his needs while just over $600 per month of his total income would be "deemed" available to pay Rita Rindahl's medical expenses. *See* Minn.R. 9505.0075 subp. 3D (1987).

In order for Rita Rindahl to be afforded the same protections afforded Dwight Rindahl through "deeming," she must be a contributing spouse. She can be considered a contributing spouse only if (1) she can be qualified as a wage earner or (2) if she can be qualified as the sole recipient of all income received by appellants.

(1) Rita Rindahl cannot be qualified as a wage earner. While it is true that the "name on the instrument rule"

> has no explicit basis in either the Medicaid statute or the Medicaid regulations * * * [and] the rule represents the Secretary's administrative interpretation of Medicaid regulation 42 CFR § 435.723,

*Bowen* at 553, the Supreme Court has stated:

> In view of [the] explicit delegation of substantive authority [to determine what is and is not available income under 42 U.S.C. § 1396a(a)(17)(B) ], the Secretary's definition of the term "available" is "entitled to more than mere deference or weight." * * * Rather, the Secretary's definition is entitled to "legislative effect" because, [i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term * * * [and the task of the court] is the limited one of ensuring that the Secretary did not "excee[d] his statutory authority" and that the regulation is not arbitrary or capricious.

*Schweiker*, 453 U.S. at 45, 101 S.Ct. at 2640 (citations omitted). The broad "legislative effect" given to the Secretary's pronouncements regarding definition and interpretation of "available" when considered in conjunction with the presumption in *Schweiker* that income may, indeed, be treated as having been earned and received by only one spouse, prohibits us from qualifying Rita Rindahl as a wage earning spouse. *See also Mattingly by Mattingly v. Heckler*, 784 F.2d 258, 268 (7th Cir.1986).

(2) Neither may Rita Rindahl be qualified as the sole recipient of all appellants' income. Federal statutes leave the definition of "income" to state medical assistance plans. 42 U.S.C.A. § 1396a(a)(17)(B). Minnesota Medicaid rules define income as "cash or other benefits, whether earned or unearned, received by or available to an applicant or recipient * * *." Minn.R. 9505.0015, subp. 22 (1987). We find no ambiguity in this definition sufficient for us to assist Rita Rindahl. Under the definition of income, Dwight Rindahl is the recipient; his name is on each check. Additionally, Rita Rindahl is neither an applicant for nor a recipient of medical assistance.

We conclude that under both federal and state of Minnesota rules and regulations, we must accept the harsh result here. The state of Minnesota has determined that Dwight Rindahl is qualified to receive certain Medicaid assistance. The state, being subject to federal constraints, has extracted a price for its assistance and that price meets the standards set forth by both state and federal governments.

We note also that our inability to broaden the circumstances where deeming is ap-

propriate is consistent with the Supreme Court's observation that

Congress itself already ha[s] considered the "relevant factors" in authorizing "deeming" between spouses. * * * In these circumstances, the Secretary need not do more.

*Schweiker*, 453 U.S. at 50 n. 22, 101 S.Ct. at 2643 n. 22 (citation omitted).

## II.

■ Generally, an agency rule is arbitrary and capricious if

the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Manufacturers Association of the U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

The name on the instrument rule attributes all of appellant's income to Dwight Rindahl leaving Rita Rindahl with a monthly maintenance allowance of $402. Appellants argue that this interpretation and application of the rule is unreasonable, arbitrary and capricious, presumably because it fails to consider that $402 per month is insufficient to meet Rita Rindahl's needs. Again, we must disagree.

## A. LIMITED PUBLIC FUNDS

The Supreme Court has stated:

[A] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status * * *.

*Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975). Additionally, it has also declared that

[a] reviewing court may not set aside the Secretary's regulations "simply because it would have interpreted the statute in a different manner." * * * *A fortiori* [a state] may not ignore federal regulations simply because it interprets [42 U.S.C.A.

§ 1396a(a)(17) ] in a manner it considers preferable to the Secretary's interpretation.

*Herweg v. Ray*, 455 U.S. 265, 277, 102 S.Ct. 1059, 1067, 71 L.Ed.2d 137 (1982) (citing *Batterton v. Francis*, 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977)). When examining the attribution of all of appellant's income to Dwight Rindahl, we must be mindful that:

In establishing public assistance programs, Congress often has determined that the Federal Government cannot finance a program that provides meaningful benefits in equal measure to everyone. *Both federal and state funds available for such assistance are limited.*

*Schweiker v. Hogan*, 457 U.S. 569, 590, 102 S.Ct. 2597, 2610, 73 L.Ed.2d 227 (1982) (emphasis added). A couple cannot challenge the distribution of Medicaid funds solely because the Medicaid eligibility requirements limit the maintenance allowance for the "at home" spouse to the maximum amount that spouse would otherwise be allowed to keep if eligible for Medicaid. To allow such a greater amount would effectively subsidize non-Medicaid recipients at a higher level than allowed for Medicaid beneficiaries, thus eroding the limited federal and state funds available to other qualified Medicaid recipients. *See Mattingly*, 784 F.2d at 266.

In a factual context similar to the instant case, *Mattingly* observed that allowing the noninstitutionalized spouse a maintenance allowance not greater than that allowed under the relevant state and federal Medicaid provisions

further[ed] the Congressional goal recognized in *Hogan* of directing limited Medicaid funds to meet the costs of medical care for those individuals who are the most needy [and that] in the context of limited Medicaid funds and the federal guidelines governing the Medicaid program, increasing the amount of the spousal maintenance allowance would decrease the Medicaid funds available for the medical care of Medicaid recipients contrary to Congressional intent.

*Id.* at 266–67. This protection of the public fisc is consistent with the idea that

> [a] state * * * [should] do all in its power to prohibit Medicaid recipients from shifting the entire cost of their medical care to the government.

*Id.* at 268. As such, the attribution of all of appellant's income to Dwight Rindahl and the resulting $402 monthly maintenance allowance is in conformance with the prevailing wisdom regarding limited Medicaid funds.

### B. REJECTION OF THE RULE IN OTHER JURISDICTIONS

To support their argument that the attribution was unreasonable, arbitrary and capricious, appellants cite two cases which reject the "name on the instrument" rule because it conflicts with the community property aspects of the state's marital property laws. *See Bowen,* 815 F.2d 549, 557 (Secretary's refusal to let Washington state amend its Medicaid plan to allow use of community property principles instead of "name on the instrument" rule to determine Medicaid eligibility found arbitrary and capricious); *Department of Health Services of the State of California v. Secretary of Health and Human Services,* 823 F.2d 323, 327 (9th Cir.1987) (Secretary's rejection of California's attempt to use community property principles to determine Medicaid eligibility instead of "name on the instrument" rule is reversed). Admitting that Washington and California are community property states, appellants argue that the principles underlying an analysis of the federal Medicaid requirements are identical in both community property and common law states. We do not find appellants' argument persuasive. Minnesota is not a community property state, *Nelson v. Nelson,* 149 Minn. 285, 183 N.W. 354 (1921); *see also* Minn.Stat. § 519.02 (1986). Because the determinative element in both decisions cited by appellant was the community property nature of the state's respective property laws, *see Bowen,* 815 F.2d at 553 ("We consider this question in the specific context of Washington community property law * * * "); *see also Department of Health,* 823 F.2d at 326, 327,

the principles which form the basis of those opinions cannot be used to alter the application of the Medicaid regulations in this state.

### C. OTHER CONSIDERATIONS

1. As noted earlier, failure of Minnesota to conform its Medical Assistance plan to federal standards would jeopardize continued receipt of federal funds. *See Turner,* 391 N.W.2d at 769; 42 U.S.C.A. § 1396c. Had the Commissioner refused to conclude that the three checks were Dwight Rindahl's income, that failure to attribute the income to him would have been contrary to the accepted implementation of "name on the instrument rule." Alternatively, had the Commissioner allowed Rita Rindahl a "maintenance allowance" in excess of $402, that allowance would have been inconsistent with the Secretary's regulation forbidding maintenance allowances for at home spouses to exceed the medical assistance eligibility limit for individuals living in their own homes. *See* 42 C.F.R. § 435.832(c)(2) (1987). In either case, Minnesota's continued receipt of federal Medicaid funds would have been imperiled.

2. Even if we were to find application of the "name on the instrument rule" to be arbitrary or capricious, the state's definition of income would still result in attribution of all of appellants' income to Dwight Rindahl. All three checks are Dwight Rindahl's income. This is consistent with the federal statutory requirement that the income is to be considered in terms of what is "available" to an applicant under 42 U.S.C.A. § 1396a(a)(17)(B). Our declaring the Commissioner's application of the "name on the instrument rule" to be arbitrary or capricious would not be sufficient to allow the additional monies Rita Rindahl requests.

3. As indicated by both appellants and respondent, the recently enacted Medicare Catastrophic Coverage Act Pub.L. No. 100–360, 102 Stat. 683 (1988) will provide some relief for appellants when the relevant provisions take effect September 30, 1989 and allow protection of greater monies for a noninstitutionalized spouse in Rita Rin-

dahl's position. *See id.* § 303(a), (g), 102 Stat. 757–58, 763–64. Appellants argue that passage of the Act will limit the application of the "name on the instrument rule" and therefore the rule should be found arbitrary and capricious in this case. Assuming, arguendo, that the act will limit the scope of the rule, it would be improper for this court to hold the "name on the instrument rule" to be arbitrary and capricious here simply because Congress has provided for a future restriction of its scope. Such a holding would be an intentional attempt by this court to circumvent the express intent of Congress to limit but not eliminate application of the rule.

As the name on the instrument rule of which appellants complain "represents the Secretary's administrative interpretation of Medicaid 42 C.F.R. § 435.723," *Bowen*, 815 F.2d at 553, we lastly note that our conclusion is consistent with the Supreme Court's declaration (in a different context) that

> With regard to the optional categorically needy, we find that the Secretary has not exceeded his authority in promulgating 42 C.F.R. § 435.723 (1980) and that *this regulation is neither arbitrary nor capricious.*

*Herweg v. Ray*, 455 U.S. 265, 278, 102 S.Ct. 1059, 1068, 71 L.Ed.2d 137 (1982) (emphasis added).

Finally, while we agree with the observation of the dissent that "judicial review is to ensure that [the Secretary's regulations] are not arbitrary or capricious," it is clear that all case law which has interpreted those regulations has, in fact, found that they are neither arbitrary nor capricious. *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981); *Mattingly by Mattingly v. Heckler*, 784 F.2d 258 (7th Cir.1986).

### III.

◼ Finally, appellants argue that Minnesota marital property law should be applied to determine the ownership of the family income. We cannot so apply the provisions of Minnesota Statutes Chapter 518. Those provisions are applicable only to those situations involving annulment,

dissolution of marriage or legal separation. *See* Minn.Stat. §§ 518.54, subd. 3; 518.552, subd. 1 (1986). The facts of this case fit none of these categories. The Minnesota Supreme Court has stated:

> [W]hen a statute speaks with clarity in limiting its application to specifically enumerated subjects, its application shall not be extended to other subjects by process of construction.

*Martinco v. Hastings*, 265 Minn. 490, 495, 122 N.W.2d 631, 637 (1963) (citations omitted).

Generally, regarding possible preemption by federal Medicaid statutes,

> State family and family-property law must do "major damage" to "clear and substantial" federal interests before the Supremacy Clause will demand that the state law be overridden.

*Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (citation omitted). Also,

> State family law cannot be preempted by federal law unless "Congress has positively required [preemption] by direct enactment."

*Bowen*, 815 F.2d at 556 (citation omitted).

Appellants recognize both that "[the] Medicaid statute does not expressly provide for the preemption of state family-property law" and that Minnesota marital property law will not damage a "clear and substantial" federal interest. *See Bowen*, 815 F.2d at 556. Therefore, Minnesota's family-property law is not preempted by the federal Medicaid statutes and the unpreempted state law itself precludes its own application in this situation.

It is not without concern and reluctance that we reach our conclusion that Minnesota marital property law is nonapplicable to the facts of this case. That nonapplicability presents yet one more indication of how disparate is the treatment received by the traditional homemaker whose talents and energies throughout a lengthy marriage have been directed toward the advancement of a spouse's career and the financial position of the family unit. The substantial contributions of the traditional homemaker

go unrecognized and unrewarded under circumstances similar to those of appellants here. As did the referee and the trial court in this matter, we empathize with the burden our decision places upon appellants. We also share the frustration of the referee and the trial court in the result which we all felt compelled to reach. Were we the policymakers in this instance, we would develop a policy which more adequately and realistically addressed the indivisibility and interdependence of the economic unit here present.

## DECISION

Because the attribution of all of appellants' income to Dwight Rindahl is neither contrary to law nor arbitrary or capricious and because Minnesota family property law is not applicable to a situation not involving an annulment, dissolution or separation, we must, regrettably, affirm.

Affirmed.

CRIPPEN, Judge, dissenting.

Where the noninstitutionalized spouse has income of $1,525.61, Medicaid regulations of the Secretary of Health and Human Services require the income recipient to turn over all but about $925 for care of the institutionalized spouse. *See* Minn.R. 9505.0075, subp. 3(D) (1987) (permitted by 42 C.F.R. § 435.734 (1987)). This demand is lawful, according to the United States Supreme Court, singularly because the enactment and intention of Congress treats income of either spouse as available to the couple, based on the expectation that spouses are expected to support each other. *Schweiker v. Gray Panthers*, 453 U.S. 34, 44–9, 101 S.Ct. 2633, 2640–43, 69 L.Ed.2d 460 (1981). The Court rejected a circuit court decision, favored by dissenting justices, that faulted treatment of the married couple as a "single economic unit." *Id.* at 42, 101 S.Ct. at 2639; *see id.* at 53, 56, 101 S.Ct. at 2645, 2646 (Stevens, J., dissenting).

Sharing of income with the institutionalized spouse is one thing, says the Secretary in federal regulations, but sharing with the noninstitutionalized spouse is something else. In the latter case, the regulations provide, the earning spouse need not share at all, a result moderated inadequately by laws permitting the spouse at home an allowance ($402 here) equal to what she could earn if receiving assistance herself. 42 C.F.R. § 435.832(c)(2)(i) (1987). This double standard is arbitrary and capricious and it is the burden of the courts to prevent its application. *Schweiker*, 453 U.S. at 44, 101 S.Ct. at 2640 (although legislative effect is to be given these regulations, judicial review is to ensure that they are not arbitrary or capricious). In fact, the regulations are perverse, expanding or limiting a vital concept as deemed convenient in order to take the maximum sum of money from the couple's household. *Cf.* 42 U.S.C.A. § 1396 (West Supp.1983) (purpose of medical assistance statute to enable families and individuals to "attain or retain capability for independence or self-care"). If $600 would be available to cover costs of caring for appellant Rita Rindahl were she to be in residential care, reason dictates that no more be available to her spouse in similar circumstances.

The majority discusses but distinguishes Ninth Circuit decisions that require overlooking the source of a couple's income. *State of Washington v. Bowen*, 815 F.2d 549 (9th Cir.1987); *Department of Health Services of the State of California v. Secretary of Health and Human Services*, 823 F.2d 323 (9th Cir.1987). Although these cases deal with state community property law, it should not be overlooked that the couple's interest in individual income is also the law of Congress, insofar as Medicaid eligibility is concerned, according to the United States Supreme Court. *Schweiker*, 453 U.S. at 45–7, 101 S.Ct. at 2641–42.

Is there an element of reason in the regulations upheld here because they avoid subsidizing Rita Rindahl more than Medicaid recipients? *Mattingly by Mattingly v. Heckler*, 784 F.2d 258 (7th Cir. 1986). If this view is reasonable, what explains permitting the larger subsidy to the couple when the income recipient is at home? Congress has treated couples as a single economic unit, and it is unacceptable

to capriciously disregard that treatment. Although public assistance laws may compel impoverishment for eligibility, the courts are not free to disregard instances where Congress has determined this should not be so.

Finally, we are asked to spare Minnesota any loss of Medicaid funds. However, this case does not involve litigation of a federal claim of nonconformity. 42 U.S.C.A. §§ 1316(a)(3), 1396c (West Supp.1988). Neither the jurisdiction nor standard for our appellate review has been questioned on the issue litigated here in the state courts. If we have jurisdiction to act on local administration of Medicaid funds, we cannot be bound by what we predict federal executive authorities might decide.

I respectfully dissent.