In re the Application of RELOCATION BENEFITS OF WILKINS PONTIAC, INC.

No. C7–94–1933.

Court of Appeals of Minnesota.

April 25, 1995.

Review Denied June 23, 1995.

Christopher J. Dietzen, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for relator.

Wayne G. Popham, Bruce L. McLellan, Popham, Haik, Schnobrich, Kaufman, Ltd., Minneapolis.

Considered and decided by HARTEN, P.J., HUSPENI, and MINENKO,* JJ.

## OPINION

EUGENE MINENKO, Acting Judge.

Wilkins Pontiac's petition for relocation benefits was denied by the Economic Development Authority. Wilkins appealed and a hearing was conducted. The hearing officer granted a portion of Wilkins's claimed relocation expenses. Wilkins now brings this appeal, claiming it is entitled to additional reimbursement consisting of carrying costs and attorney fees. We affirm.

## FACTS

Wilkins Pontiac (Wilkins) was a car dealership on Excelsior Boulevard in St. Louis Park. The Economic Development Authority (EDA) for the City of St. Louis Park wished to redevelop certain property along Excelsior, including the site occupied by Wilkins. Wilkins opposed the redevelopment of the area and demanded that it be allowed to stay at the Excelsior Boulevard location. Although the developer retained for the project subsequently withdrew from it, Wilkins was aware that the EDA nonetheless intended to pursue the redevelopment; thus, Wilkins contacted its franchisor GM–Pontiac regarding the need to relocate.

The EDA eventually entered into a redevelopment agreement with a different developer in January of 1987 and informed Wilkins that a possible relocation site owned by Westinghouse was on the market. In March of 1987, Wilkins obtained an option to purchase that property and employed an attorney to investigate the possibility of the property being rezoned for use as a car dealership. As a result of the investigation, Wilkins concluded that obtaining rezoning approval was unlikely.

The EDA commenced a proceeding for the condemnation of the Wilkins site and arranged for estimates both of the fair market value of the fixtures on the property and of the costs of Wilkins's relocation. The pleadings requested the court to order that the transfer of title and possession of Wilkins Pontiac would occur on November 16, 1987. Although in negotiations Wilkins advised the EDA that GM–Pontiac would need to consent to a relocation site, the EDA and the redeveloper maintained their position that Wilkins should vacate the premises by November 16, 1987. Wilkins concluded that it would need

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

more time to relocate to the Westinghouse site—which it had deemed a suitable site—or that it would be forced to close the business and lose the franchise. Westinghouse would not grant Wilkins·an option on the property, and the EDA denied Wilkins's request for a continuance of the hearing date of November 18, 1987.

The EDA, the redeveloper, and Wilkins then entered into a written settlement agreement. This agreement provided that Wilkins would dismiss all of its claims and would purchase the Westinghouse site for the relocation of the Pontiac dealership in exchange for the redeveloper's payment of $237,500 and the EDA's payment of $262,500 to Wilkins. The agreement was contingent on the necessary zoning approvals and the approval of the site by GM–Pontiac. The agreement allowed Wilkins to remain on its premises until October 31, 1988, and permitted Wilkins to present a claim for relocation benefits if GM–Pontiac did not approve the relocation. Wilkins purchased the Westinghouse site, but was denied approval by GM–Pontiac to transfer its car dealership. Wilkins eventually entered into a confidential settlement agreement with GM–Pontiac with respect to this denial. The redeveloper then terminated its involvement with the redevelopment project.

In August 1988, GM–Pontiac employed an attorney to seek rezoning of another property on which Wilkins had an option. The rezoning request, which eventually went before the city council, was denied in May 1989. Wilkins continued to seek the consent of GM–Pontiac to relocate its car dealership to the Westinghouse property but as time went on concluded that GM–Pontiac would not grant the approval. At last, in January 1991, GM finally granted approval for the Westinghouse site, but made clear that Wilkins would have to defend a protest by a competing car dealership if one arose. In the meantime, Wilkins had put the Westinghouse property up for sale and had received various offers. These offers were withdrawn when the city declared a moratorium on the granting of land use approvals. By the spring of 1992, Wilkins had been able to obtain approval to *lease* the Westinghouse premises, and leased them fully by May 1992.

In late 1990, Wilkins began negotiations for the purchase of a parcel in Golden Valley to which it wished to relocate its car dealership. The final purchase agreement was executed on January 31, 1992, and construction commenced that summer. Wilkins moved to the new site in September of 1992.

In August 1992, Wilkins formalized its request for relocation benefits and gave notice to the EDA of its intent to vacate the Excelsior Boulevard premises on September 30, 1992. Wilkins claimed carrying costs from the Westinghouse property, and attorney fees in the amount of $1,015,610, costs of relocating of between $79,000 and $103,000, costs of nonremovable fixtures of $126,598, offsets of $13,877, and the cost of installing a new sign of $14,150. Wilkins also claimed $49,194 in attorney fees for its pursuit of GM's approval of the Westinghouse site, its eventual procurement of a new franchise agreement and the franchisor's approval of the Golden Valley site, and its settlement with GM–Pontiac for wrongfully withholding its approval of the Westinghouse site.

The EDA denied Wilkins's claim, and Wilkins appealed. The hearing officer found that the attorney fees charged and paid to Wilkins's attorney were reasonable, and concluded that as a direct and proximate result of EDA's condemnation of the subject property, Wilkins incurred expenses consisting of carrying costs, attorney fees, costs of the physical move, and the loss of immovable fixtures. The officer concluded that Wilkins took reasonable steps to mitigate any damages in connection with carrying the Westinghouse property. Nonetheless, the hearing officer concluded that the carrying costs related to the Westinghouse site were not recoverable. The officer concluded that Wilkins was entitled to recover relocation expenses in the amount of $254,648.

Now on appeal, Wilkins claims an entitlement to recover the carrying costs it incurred on the Westinghouse property and to recover attorney fees in addition to that already awarded.

## ISSUES

1. Is Wilkins entitled to recover the carrying costs it incurred on the Westinghouse property when it was not in the end able to relocate to that property?

2. Is Wilkins entitled to the full amount of attorney fees it requested?

## ANALYSIS

On appeal, this court is to determine whether the agency kept within its jurisdiction and then decide whether the decision of the agency was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of the law or without evidence to support it. *Markwardt v. State Water Resources Bd.*, 254 N.W.2d 371, 374 (Minn.1977).

Wilkins brought its claim for relocation expenses under Minn.Stat. § 117.52 (1992). This statute applies to all acquisitions undertaken by any acquiring authority where no federal funding is involved. *Id.*, subd. 1. This statute requires the acquiring authority to provide relocation assistance in accordance with federal regulations promulgated to provide similar relief. *Id.* The federal statute enabling such regulations is found at 42 U.S.C. §§ 4621, 4622 (1988). Section 4622 provides that a displacing agency shall provide for the payment to the displaced person of

1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;

\*   \*   \*   \*   \*   \*

3) actual reasonable expenses in searching for a replacement business or farm; and

4) actual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization, or small business at its new site, but not to exceed $10,000.

The regulations implementing this statute are found at 49 C.F.R. §§ 24.1–.603 (1991).

### 1. Carrying costs

Wilkins believes that the carrying costs incurred on the Westinghouse property are compensable relocation benefits as they are tantamount to rent for that site. It claims that courts have allowed benefits for duplicative rent or to make a second move when the original relocation site is unacceptable. Wilkins argues that the carrying costs are recoverable as reasonable and necessary moving expenses and the agency has no discretion to deny the reimbursement of such expenses.

### a. "Reasonable and necessary"

■ Wilkins claims that the EDA erred in its application of the law by refusing its claim for carrying costs when those costs were deemed reasonable and necessary by the hearing officer and since such costs are tantamount to rent. The first argument is that 49 C.F.R. § 24.303(a)(14) (1991), granting the displaced entity entitlement to payment for "[o]ther moving-related expenses that are not listed as ineligible under § 24.305, as the Agency determines to be reasonable and necessary," requires that such expenses be recovered.

Even if Wilkins's argument were valid, it should be noted that the hearing officer did *not* determine that the carrying costs were reasonable and necessary, just that they had been incurred as a proximate result of the condemnation. It was GM's refusal to grant Wilkins permission to move which led to the carrying costs in this case. Damages incurred as a result of this refusal have been addressed under the terms of Wilkins's confidential settlement with GM. The actions of GM, a third party in this scenario, do not render the carrying costs incurred by Wilkins reasonable and necessary. Thus, the language of the provision to the effect that "a displaced person \* \* \* is entitled to payment for such actual moving and related expenses, as the Agency determines to be reasonable and necessary" is not invoked. 49 C.F.R. § 24.303(a) (1991).

### b. Carrying costs as tantamount to rent

■ Wilkins adduces no legal support for the proposition that it should recover its carrying costs for the Westinghouse property because such costs are tantamount to rent. In attempting to advance this argument, Wilkins relies heavily on inapplicable case law. For example, Wilkins has carefully styled *Pou Pacheco v. Soler Aquino*, 833 F.2d 392

(1st Cir.1987), as a case in which the court found the acquiring authority fully responsible as a matter of law for the costs of relocating incurred by the coffee company. Appellant's brief omits the many references in the case to the court's deference to the jury's factfinding function. *Id.* at 397–402. *Pou Pacheco* counsels deference to the factfinder and thus does not support Wilkins argument that the agency has no discretion in this matter. Furthermore, just as the regulations at issue in *Pou Pacheco* did, the current regulations expressly exclude from reimbursement expenses involving the acquisition of real property. *See* 49 C.F.R. § 24.304(b)(1) (1991) (the purchase of capital assets is not reimbursable as a relocation expense).

*Plastic Distributors v. Burns,* 5 Conn.App. 219, 497 A.2d 1005 (Ct.1985) is also unavailing to Wilkins. That case arose under Connecticut's relocation assistance provisions and makes no reference whatsoever to the federal regulations at issue here. *Id.* at 1007.

■ Under the regulations, the agency has the discretion to determine which expenses are reasonable and necessary and thus which qualify for reimbursement under the relocation expenses regulations. The agency in this case has determined that carrying costs incurred by Wilkins are not reimbursable relocation expenses. The record supports the agency's determination, and it is in accordance with the law.

*2. Attorney fees*

■ Wilkins claims entitlement, under 49 C.F.R. § 24.303(a)(6) (1991), to attorney fees it expended related to securing the approval of the franchisor to relocate to the Westinghouse site and later to the Golden Valley site. The regulation provides that a displaced person is entitled to payment for moving expenses including "[a]ny license, permit, or certification required of the displaced person at the replacement location." *Id.*

■ Even if securing a franchisor's permission to relocate fell within the definition of a "license, permit, or certification," the regulation nonetheless does not provide for reimbursement for attorney fees related to securing this permission. It is 49 C.F.R. § 24.303(a)(8) (1991) which allows for the reimbursement of professional services and restricts such reimbursement to those expenses necessary for "(i) [p]lanning the move of the personal property, (ii) [m]oving the personal property, and (iii) [i]nstalling the relocated personal property at the replacement location." This provision does not contemplate reimbursement of attorney fees for securing a franchisor's permission to relocate and certainly not reimbursement for fees incurred in negotiations after the refusal of such permission. These fees were likely handled under the terms of Wilkins's secret settlement with GM and cannot be claimed here.

■ The more appropriate section under which to grant attorney fees incurred for the purpose of obtaining a franchise is 49 C.F.R. § 24.304 (1991), relating to reestablishment expenses. This section provides that "[p]rofessional services in connection with the purchase or lease of a replacement site" may be reimbursed as well as "[o]ther items that the Agency considers essential to the reestablishment of the business." *Id.,* (a)(9), (12). This section limits the agency to payments not to exceed $10,000. 49 C.F.R. § 24.304. The agency's decision to compensate Wilkins for attorney fees incurred was properly made under this section and was properly limited to $10,000.

## DECISION

The agency did not abuse its discretion in refusing to award Wilkins's carrying costs and additional attorney fees.

**Affirmed.**