In the Matter of an INVESTIGATION INTO the COMMISSION'S JURISDICTION OVER the CITY OF HUTCHINSON'S INTRASTATE NATURAL GAS PIPELINE Pursuant to Minn.Stat. § 216B.045.

Nos. A04–2342, A04–2414.

Court of Appeals of Minnesota.

Dec. 27, 2005.

Gary A. Van Cleve, Molly McKee, Larkin Hoffman Daly & Lindgren, Ltd., Bloomington, MN, for relator Hutchinson Utilities Commission.

Kathleen M. Brennan, Andrew J. Shea, McGrann Shea Anderson Carnival Straughn & Lamb, Minneapolis, MN, for relator Minnesota Municipal Utilities Association.

Mike Hatch, Attorney General, Kari Valley Zipko, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Public Utilities Commission.

Hugh T. Nierengarten, Nierengarten & Hippert, Ltd., New Ulm, MN, for amicus curiae City of New Ulm.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for amicus curiae League of Minnesota Cities.

Considered and decided by
STONEBURNER, Presiding Judge;
PETERSON, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Relators Hutchinson Utilities Commission (HUC), a municipal utility, and Minnesota Municipal Utilities Association (MMUA), a nonprofit corporation that provides services and assistance to Minnesota cities engaged in utility enterprises, challenge the exercise of jurisdiction by respondent Minnesota Public Utilities Commission (MPUC) over a pipeline owned by the City of Hutchinson on the ground that it exceeds the statutory mandate of the MPUC. Alternatively, relators challenge the MPUC's exercise of jurisdiction as arbitrary and capricious. Because we find that the MPUC exceeded its statutory mandate, we reverse without reaching relators' alternative argument.

## FACTS

This case concerns the regulation of an 89-mile underground natural-gas pipeline that runs from Trimont to Hutchinson and transports natural gas to the City of New Ulm, New Ulm's electric-generating facilities, the City of Hutchinson, and HUC's electric-generating facilities. Beginning in 1960, HUC contracted with Northern Natural Gas Company (Northern) for its natural-gas supply. But in 2001, Northern offered HUC insufficient natural-gas capacity. Because of the energy shortfall, HUC decided to build its own pipeline. Construction of a natural-gas pipeline involves oversight by the MPUC. *See* Minn. Stat. § 216B.243, subd. 2 (2004) (requiring that a certificate of need be filed with the MPUC before siting or construction of any "large energy facility").

HUC applied for and was granted a Certificate of Need from the MPUC on December 13, 2002.[1] At that time, the

---

1. After HUC applied for a Certificate of Need, as a "person" proposing to construct a "large energy facility," Northern intervened and objected. MPUC determined that HUC's proposed pipeline would meet the energy demands that could not be met more cost effectively by other measures. This court affirmed that decision. *In re Application of Hutchinson for Certificate of Need,* No. A03–99 (Minn.App. Sept.23, 2003).

MPUC concluded that it need not decide whether the pipeline would be subject to regulation under Minn.Stat. § 216B.045 (2004).

On January 28, 2004, Northern, now a competitor of HUC, submitted a letter to the MPUC requesting that the commission address the jurisdictional issues deferred in the certificate-of-need decision and investigate to determine whether HUC's pipeline services complied with Minn.Stat. § 216B.045.[2] On March 23, 2004, the MPUC held an initial hearing but ultimately deferred the matter and ordered additional briefing.

The next hearing occurred on August 19, 2004. At that time, the MPUC considered whether it had jurisdiction and, if so, whether it should regulate HUC's pipeline under section 216B.045. In an order issued September 15, 2004, the MPUC determined that the HUC's pipeline meets the statutory definition of an intrastate natural-gas pipeline under Minn.Stat. § 216B.045, subd. 1, and that MPUC had jurisdiction over HUC's pipeline.

HUC, MMUA, and the City of New Ulm petitioned the MPUC for reconsideration, but the MPUC denied reconsideration. HUC and MMUA thereafter filed petitions for writ of certiorari with this court, seeking review of the MPUC's decision.

## ISSUE

Did the MPUC exceed its statutory mandate by exercising jurisdiction over HUC's pipeline?

## ANALYSIS

 Whether an agency has jurisdiction over a matter is a legal question, and thus a reviewing court need not defer to agency expertise on the issue. *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Statutory construction is a question of law, which we review de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

██ Minn.Stat. § 14.69 (2004) outlines the scope of judicial review of an agency decision:

> In a judicial review under sections 14.63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
>
> (a) in violation of constitutional provisions; or
>
> (b) in excess of the statutory authority or jurisdiction of the agency; or
>
> (c) made upon unlawful procedure; or
>
> (d) affected by other error of law; or
>
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
>
> (f) arbitrary and capricious.

On appeal from an agency decision, the party seeking review bears the burden of proving that the agency's conclusions violate one or more provisions of Minn.Stat. § 14.69. *Markwardt v. State, Water Resources Bd.*, 254 N.W.2d 371, 374 (Minn.

**2.** HUC initially questioned Northern's standing to bring a complaint under Minn.Stat. § 216B.045, subd. 5, which states that the parties entitled to complain are customers or persons seeking to become customers of an intrastate pipeline, the department, or the commission on its own motion. While HUC continues to believe that Northern was not a proper complainant, it concedes on appeal that the commission has, in essence, addressed the jurisdiction issue on its own motion. Therefore, this issue is before us.

1977). Minn.Stat. § 216B.52, subd. 1 (2004), provides that an appeal from a decision and order of the MPUC may be commenced according to the Administrative Procedure Act.

As a creature of statute, the MPUC enjoys only the authority granted to it by the legislature. *Minnegasco v. Minn. Pub. Utils. Comm'n,* 549 N.W.2d 904, 907 (Minn.1996); *Frost–Benco Elec. Ass'n,* 358 N.W.2d at 642; *see also Great N. Ry. v. Pub. Serv. Comm'n,* 284 Minn. 217, 220–21, 169 N.W.2d 732, 735 (1969) (applying same principle in case involving the interstate commerce commission). That authority may be either express or implied. "While express statutory authority need not be given a cramped reading, any enlargement of express powers by implication must be fairly drawn and fairly evident from the agency objectives and powers expressly given by the legislature." *Peoples Natural Gas Co. v. Pub. Utils. Comm'n,* 369 N.W.2d 530, 534 (Minn.1985) (holding that the commission lacked express or implied authority to enforce its own orders by ordering a customer refund; noting that other enforcement tools were available in the statutes).

Here, HUC and MMUA argue that the MPUC exceeded its statutory authority when it asserted jurisdiction over HUC's pipeline. MPUC asserted jurisdiction pursuant to Minn.Stat. § 216B.045, subd. 3 (2004), which provides: "Every owner or operator of an intrastate pipeline shall offer intrastate pipeline transportation services by contract on an open access, nondiscriminatory basis."

MPUC noted in its order that jurisdiction was proper because (1) the pipeline meets the definition of an "intrastate pipeline" under the statute; (2) the statute gives jurisdiction over "every owner or operator" and HUC is an "owner or operator" of a pipeline; (3) the only owners excluded from regulation under Minn.Stat. § 216B.045 (2004) are "public utilities" and HUC does not meet the definition of a "public utility"; and (4) section 216B.045 provides for broad oversight and regulation by the commission over contracts governing services provided by intrastate pipelines and a forum for consumer complaints. *See* Minn.Stat. § 216B.045, subds. 3, 4, 5.

But in the first section of the statutory scheme on public utilities, the legislature expressly excluded municipal utilities, of which HUC is one, from most of the regulatory scheme: "Because municipal utilities are presently effectively regulated by the residents of the municipalities which own and operate them, ... it is deemed unnecessary to subject such utilities to regulation under this chapter *except as specifically provided herein.*" Minn.Stat. § 216B.01 (2004) (emphasis added).

The MPUC argues that it was proper to assert jurisdiction because HUC is an "owner" or "operator" within the meaning of Minn.Stat. § 216B.045, subd. 3, which requires "[e]very owner or operator of an intrastate pipeline [to] offer intrastate pipeline transportation services by contract on an open access, nondiscriminatory basis." And HUC also meets the definition of "person" under section 216B.045, subdivision 1, which regulates all "intrastate pipelines," meaning any pipeline "wholly within the state of Minnesota which transports or delivers natural gas received from another *person* at a point inside ... the state, which is delivered ... within the state to another, provided that all the natural gas is consumed within the state." Minn.Stat. § 216B.045, subd. 1. "Person" is defined by statute as, among other entities, a "corporation" which includes "a municipality, an association, a cooperative ... or any political subdivision

or agency." Minn.Stat. § 216B.02, subds. 2, 3 (2004).

We look to the language of chapter 216B to determine whether the MPUC properly asserted jurisdiction. Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). "Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (2004). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quotation omitted).

We conclude that the language of section 216B.01 is clear on its face. It mandates that municipal utilities are excepted from regulation under chapter 216B, "except as specifically provided herein." Minn.Stat. § 216B.01. And none of the provisions cited by respondent as bases for jurisdiction specifically provide for regulation of municipal utilities. *See* Minn.Stat. § 216B.045. In contrast, throughout chapter 216B, the legislature expressly provided for regulation of municipalities when it intended for them to be regulated. *See, e.g.,* Minn.Stat. § 216B.025 (2004) ("A municipality may elect to become subject to regulation by the commission...."); Minn.Stat. § 216B.097 (2004) (authorizing a cold weather rule specifically for municipal utilities); Minn.Stat. § 216B.241, subd. 1b(a), (b) (2004) ("This subdivision applies to ... (3) a municipality with gross operating revenues in excess of $5,000,000 from sales of natural gas to retail customers.... Each ... municipality subject to this subdivision shall spend and invest for energy conser-

vation improvements...."); Minn.Stat. § 216B.36 (2004) ("Notwithstanding the definition of 'public utility' in section 216B.02, subdivision 4, a municipality may require payment of a fee under this section by a cooperative electric association ... that furnishes utility services within the municipality."). Therefore, we conclude that section 216B.045 cannot serve as a basis for jurisdiction over HUC's pipeline because the provision does not specifically provide for regulation as required under section 216B.01.

Next, the MPUC argues that it was proper to assert jurisdiction because the purpose of section 216B.01 is not met in this case, given that HUC's pipeline also serves New Ulm residents. The MPUC contends that because the New Ulm residents have no control over HUC by the opportunity to vote for HUC members, the HUC is not "effectively regulated" according the section 216B.01. We disagree. In this case, non-residents of Hutchinson do have a means to lodge complaints relating to HUC's pipeline with the MPUC. *See* Minn.Stat. § 216B.045, subd. 5. Section 216B.045 provides a complaint mechanism for non-residents, and we conclude that this provision allows for effective regulation of HUC's pipeline. And "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16.

Finally, although we do not inquire into public-policy concerns when a statute is unambiguous, we note that, here, the legislature's expressed public policy is to allow local governments to regulate municipal utilities, *see* Minn.Stat. § 216B.01, and our result is consistent with that policy.

## DECISION

Because the legislature mandated that municipalities are excluded from the regu-

latory scheme unless the statute expressly provides and Minn.Stat. § 216B.045 (2004) does not expressly provide for regulation of municipal utilities, MPUC exceeded its statutory authority by asserting jurisdiction over HUC's pipeline. We, therefore, reverse the agency determination as provided under Minn.Stat. § 14.69 (2004).

**Reversed.**