**In the Matter of the Application of NORTHERN STATES POWER COMPANY d/b/a Xcel Energy for Approval of a Mercury Emissions Reduction Plan for the Sherburne County Generating Facility's Unit 3.**

No. A09–364.

Court of Appeals of Minnesota.

Dec. 1, 2009.

William E. Flynn, Todd J. Guerrero, Paul Banker, Lindquist & Vennum PLLP, Minneapolis, MN, for relator Southern Minnesota Municipal Power Agency.

Sam Hanson, Michael W. Kaphing, Briggs and Morgan, P.A., Minneapolis, MN, for respondent Northern States Power Company d/b/a Xcel Energy.

Lori Swanson, Attorney General, Jeanne M. Cochran, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Public Utilities Commission.

Considered and decided by LARKIN, Presiding Judge; HALBROOKS, Judge; and JOHNSON, Judge.

## OPINION

HALBROOKS, Judge.

Relator Southern Minnesota Municipal Power Agency (SMMPA), a municipal utility, challenges respondent Minnesota Public Utilities Commission's (MPUC) approval of a mercury-emissions-reduction plan for Sherburne County Generating Facility Unit 3 (Sherco 3) as exceeding MPUC's jurisdiction. Alternatively, SMMPA challenges MPUC's approval of the plan as arbitrary or capricious. Because we conclude that MPUC acted within its legislatively granted authority and did not act arbitrarily or capriciously, we affirm.

## FACTS

The Minnesota Mercury Emissions Reduction Act states:

> [A] public utility that owns a dry scrubbed unit at a qualifying facility shall develop and submit to the agency and the commission a plan for mercury emissions reduction at each such unit. At each dry scrubbed unit owned and operated by the utility, the plan must propose to employ the available technology for mercury removal that is most likely to result in the removal of at least 90 percent of the mercury emitted from the unit.

Minn.Stat. § 216B.682, subd. 1(a). The "agency" refers to the Minnesota Pollution Control Agency (MPCA), and the "commission" refers to MPUC. Minn.Stat. §§ 216B.02, subd. 1a, .68, subd. 2 (2008). After a plan is submitted, MPCA "shall evaluate a utility's mercury emissions-reduction plan[ ] ... and submit its evaluation to [MPUC] within 180 days." Minn. Stat. § 216B.684.

Following the MPCA evaluation, MPUC "shall review and evaluate a utility's mercury emissions-reduction plan[ ]" considering "the environmental and public health benefits, the agency's assessment of technical feasibility, competitiveness of customer rates, and cost-effectiveness of the utility's proposed mercury-control initiatives in

light of the [MPCA's] report under section 216B.684." Minn.Stat. § 216B.685, subd. 1. Then, "[w]ithin 180 days of receiving the agency's report on a utility's plan ..., the commission shall order the implementation of [the plan], unless the commission determines that the plan as proposed fails to provide for increased environmental and health benefits or would impose excessive costs on the utility's customers." *Id.*, subd. 2(a).

Respondent Northern States Power Company d/b/a Xcel Energy (Xcel) submitted its "Mercury Control Plan for Sherco Unit 3" to MPCA and MPUC in accordance with the act. Sherco 3 is an electric power plant co-owned by SMMPA (41% ownership interest) and Xcel (59% ownership interest). Xcel is the sole operator of Sherco 3, and the parties' co-ownership is governed by agreement. Xcel stated in its plan that it was "filing this Plan on its own behalf" and that "[w]e are currently discussing cost sharing options for the project with SMMPA." In the plan, Xcel estimated the cost of implementation at $87 million by 2020, which corresponds to a rate increase in 2010 of $.10 per month per residential customer, assuming no cost sharing with SMMPA. MPCA recommended approval of Xcel's plan to MPUC. During MPUC's subsequent review and evaluation of the plan, SMMPA filed comments, requesting "that the Commission delay taking action in this docket until after SMMPA and Xcel resolve the issues associated with Xcel's Plan. In the alternative, if the Commission approves the Plan, the Commission should require that Xcel alone bear the costs and risks of the Plan." SMMPA argued to MPUC that the act did not apply to it, as a municipal utility, and "therefore SMMPA's property interests cannot be impacted by [the act] without SMMPA's consent." SMMPA also argued that Xcel's plan failed to address indirect costs. Finally, SMMPA stated that "[a]dministrative efficiency compels the Com-

mission to wait until it has all pertinent information, including Xcel's emissions reduction rider, before it makes any decisions regarding the Plan."

MPUC held a hearing to address Xcel's plan on October 23, 2008. At the hearing, SMMPA raised the arguments that were contained in its comments. In its order, MPUC found that SMMPA is not subject to the act, but that Sherco 3 is subject to the act. MPUC determined that "[t]he obligations arising from [Xcel's] ownership and operation are not eliminated by the partial ownership interest of a [municipal utility]." MPUC further stated "that the proposed plan filed by Xcel meets the requirements of the statute, promises significant environmental and health benefits, is technically feasible, is cost-effective, and will not impose excessive costs on Xcel's customers." MPUC clarified that its "decision neither includes nor implies any determination on cost recovery methods or allocations, which need not be decided today."

SMMPA requested reconsideration by MPUC, which was denied. SMMPA brought this certiorari appeal, arguing that MPUC exceeded its statutory authority by exercising jurisdiction over SMMPA through the approval of Xcel's plan for Sherco 3 and that MPUC acted arbitrarily or capriciously in its approval of Xcel's plan by failing to consider rate impact as required by the act.

## ISSUES

I. Did MPUC exceed its jurisdiction by approving Xcel's mercury-reduction plan?

II. Was MPUC's approval and order for implementation of Xcel's mercury-reduction plan arbitrary or capricious?

## ANALYSIS

MPUC decisions are subject to appeal under the Administrative Procedure Act.

Minn.Stat. § 216B.52, subd. 1 (2008). The Administrative Procedure Act states that a reviewing court may reverse an agency's decision if it concludes that the agency's actions were:

> (a) in violation of constitutional provisions; or
>
> (b) in excess of the statutory authority or jurisdiction of the agency; or
>
> (c) made upon unlawful procedure; or
>
> (d) affected by other error of law; or
>
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
>
> (f) arbitrary or capricious.

Minn.Stat. § 14.69 (2008). Under this standard, SMMPA appeals MPUC's decision on the grounds that it exceeds MPUC's jurisdiction and is arbitrary or capricious.

## I. Did MPUC exceed its jurisdiction by approving Xcel's mercury-reduction plan?

■ SMMPA asserts that MPUC exceeded its jurisdiction by approving Xcel's "overly broad" plan, thereby regulating SMMPA. SMMPA argues that "[a]bsent SMMPA's consent, Xcel's plan should have been limited to Xcel's 59% ownership interest."

■ Whether an agency has jurisdiction over a matter is a legal question, and thus a reviewing court need not defer to "agency expertise." *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). But

> [t]he agency decision-maker is presumed to have the expertise necessary to decide technical matters within the scope of the agency's authority, and judicial deference, rooted in the separation of powers doctrine, is extended to an agency decision-maker in the interpretation

of statutes that the agency is charged with administering and enforcing.

*In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn.2001) (footnote omitted) (citation omitted).

■ MPUC's jurisdiction is limited to that which has been expressly authorized by the legislature. *Minnegasco v. Minn. Pub. Utils. Comm'n*, 549 N.W.2d 904, 907 (Minn.1996). The language of chapter 216B determines whether MPUC properly asserted jurisdiction. *In re Comm'n's Jurisdiction Over Hutchinson's Intrastate Natural Gas Pipeline*, 707 N.W.2d 223, 227 (Minn.App.2005). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Id.*(quotation omitted).

In chapter 216B, which directs the regulation of public utilities, the legislature draws a distinction between "public utilities" and "municipal utilities." Minn.Stat. § 216B.02, subd. 4 (clarifying that the definition of a public utility does not include a municipality furnishing electric service). MPUC's jurisdiction is limited to public utilities. Minn.Stat. § 216B.01 (2008). Section 216B.01 states that "[b]ecause municipal utilities are presently effectively regulated by the residents of the municipalities which own and operate them, . . . it is deemed unnecessary to subject [municipal utilities] to regulation under this chapter except as specifically provided herein." *Id.* In *Hutchinson*, we were faced with the question of how section 216B.01 impacts MPUC's jurisdiction to regulate a municipal utility. We concluded that "the language of section 216B.01 is clear on its face" and excepts municipal utilities from regulation except as specifi-

cally provided by chapter 216B. *Hutchinson*, 707 N.W.2d at 227.

The question we addressed in *Hutchinson* was whether Minn.Stat. § 216B.045 (2004) "specifically provided" for the regulation of a municipal utility by MPUC. *Id.* Section 216B.045, subdivision 3, requires "[e]very owner or operator of an intrastate pipeline" to offer services by contract on an open access, nondiscriminatory basis. MPUC attempted to apply section 216B.045 to a municipal utility, reasoning that the municipal utility was an owner of an intrastate pipeline and therefore subject to this statutory requirement. *Hutchinson*, 707 N.W.2d at 226. We disagreed, concluding that section 216B.045 did not "specifically provide for regulation of municipal utilities." *Id.* at 227. SMMPA similarly argues that sections 216B.682 and 216B.685, on which MPUC relied in approving Xcel's plan, do not "specifically provide" for regulation of a municipal utility. We disagree and conclude that the act unambiguously requires Xcel to submit a mercury-emissions-reduction plan, regardless of SMMPA's co-ownership.

A plan must be submitted by each public utility that owns a "dry scrubbed unit at a qualifying facility." Minn.Stat. § 216B.682, subd. 1(a). Sherco 3 is a "qualifying facility" with a 900–megawatt capacity. *See* Minn.Stat. § 216B.68, subd. 6 (defining qualifying facilities as those with "a total net dependable capacity in excess of 500 megawatts from all coal-fired electric generating units at the power plant"). Sherco 3 contains a "dry scrubbed unit," defined as a "targeted unit at which pollution control technology that uses a spray dryer and fabric filter system . . . is installed." *Id.,* subd. 3. A "targeted unit" is simply "a coal-fired electric generation unit greater than 100 megawatts at a qualifying facility." *Id.,* subd. 8. It is clear from this statutory scheme that Xcel, as a

public utility that owns a dry-scrubbed unit at a qualifying facility, is required to submit a plan for Sherco 3. And because the statute is silent on the issue of co-ownership by a municipal utility, we conclude that SMMPA's co-ownership of Sherco 3 does not relieve Xcel of its statutory obligation to submit a mercury-emissions-reduction plan for Sherco 3.

Because Sherco 3 is subject to regulation, Xcel was required to submit a plan that "propose[d] to employ the available technology for mercury removal that is most likely to result in the removal of at least 90 percent of the mercury emitted from the unit." Minn.Stat. § 216B.682, subd. 1(a). A unit is defined as "[a]n entire apparatus or the equipment that performs a specific function." *The American Heritage Dictionary* 1953 (3d ed. 2000). As respondents correctly assert, Xcel could not have complied with this requirement by submitting a plan that proposed to remove mercury emissions from its 59% interest in Sherco 3 alone. It was required to remove 90% of the mercury emitted from the "unit," which is the "entire apparatus or equipment." MPCA determined that Xcel's plan was appropriate and met the requirements of the statute.

Once an appropriate plan has been submitted and recommended for approval by MPCA, MPUC's authority to approve a plan is clear and limited. MPUC shall review and evaluate each plan submitted, based on several factors. *See* Minn.Stat. § 216B.685, subd. 1. MPUC must then order the plan implemented absent specific determinations that the plan does not provide environmental or public-health benefits or would impose excessive costs on the utility's customers. *Id.,* subd. 2(a). MPUC did that here. Asking MPUC to approve a portion of the plan or to approve the entire plan with respect to a portion of the unit, as SMMPA does here, would first

require us to read additional authority into the statute that is not there. We decline to read additional language into the statute. *See Reiter v. Kiffmeyer,* 721 N.W.2d 908, 911 (Minn.2006) (stating that courts "will not read into a statute a provision that the legislature has omitted, either purposely or inadvertently"). Xcel submitted the required mercury-emissions-reduction plan, and we conclude that MPUC's approval of Xcel's plan was within MPUC's jurisdiction.

SMMPA's assertion that our decision in *Hutchinson* requires us to conclude that the language in section 216B.685 is not specific enough to allow MPUC to approve Xcel's plan as submitted is based on an overly broad interpretation of *Hutchinson.* First, as discussed, to the extent that MPUC's approval of Xcel's statutorily required mercury-emissions-reduction plan regulates SMMPA as a co-owner, the act specifically provides for this regulation. Second, the purposes of the statutes here and in *Hutchinson* differ. The rationale behind section 216B.01 is that a municipal utility can be effectively regulated by a municipal utility's customers, without the need for MPUC regulation. The statute at issue in *Hutchinson* concerned the traditional regulatory purview of MPUC—rates and services—which are amenable to regulation by a municipal utility's customers. *See* Minn.Stat. § 216B.01. We concluded that MPUC exceeded its jurisdiction by extending its reach to these traditional regulatory matters. *Hutchinson,* 707 N.W.2d at 227. Here, the statute at issue involves public health. Unlike rates and services, mercury emissions cannot be effectively regulated by a municipal utility's customers and thus require statewide regulation. *Hutchinson* is therefore distinguishable, and the legislative intent of section 216B.01 is not undermined by MPUC's approval of Xcel's plan.

## II. Was MPUC's approval and order for implementation of Xcel's mercury-reduction plan arbitrary or capricious?

 SMMPA argues that if we conclude that MPUC has jurisdiction to approve Xcel's plan, MPUC's approval was arbitrary or capricious. An order may be arbitrary or capricious if the agency

(a) relied on factors not intended by the legislature; (b) entirely failed to consider an important aspect of the problem; (c) offered an explanation that runs counter to the evidence; or (d) the decision is so implausible that it could not be explained as a difference in view or the result of the agency's expertise.

*Citizens Advocating Responsible Dev. v. Kandiyohi County Bd. of Comm'rs,* 713 N.W.2d 817, 832 (Minn.2006). But "[i]f there is room for two opinions on a matter, the Commission's decision is not arbitrary and capricious, even though the court may believe that an erroneous conclusion was reached." *In re Review of 2005 Annual Automatic Adjustment of Charges for All Elec. & Gas Utils.,* 768 N.W.2d 112, 120 (Minn.2009).

According to the act, MPUC must consider four factors in its review: "the environmental and public health benefits, the agency's assessment of technical feasibility, competitiveness of customer rates, and cost-effectiveness of the utility's proposed mercury-control initiatives." Minn.Stat. § 216B.685, subd. 1. MPUC must then order implementation unless it determines that the plan "fails to provide for increased environmental and health benefits or would impose excessive costs on the utility's customers." *Id.,* subd. 2(a). To determine that MPUC did not act arbitrarily or capriciously in approving Xcel's plan, we must assess whether MPUC considered the four required factors in its review and

confirm that MPUC did not make a determination prohibiting implementation.

■ MPUC found that the plan "meets the requirements of the statute, promises significant environmental and health benefits, is technically feasible, is cost-effective, and will not impose excessive costs on Xcel's customers." SMMPA argues that MPUC did not "consider . . . the 'competitiveness of customer rates.'" SMMPA asserts that because MPUC did not make a decision "on cost recovery methods or allocations" as between Xcel and SMMPA and because MPUC only considered the impact on Xcel's residential customers, as opposed to all classes of customers, MPUC could not have fully considered the competitiveness of customer rates. But the act does not require consideration of competitiveness for each customer class, nor does it require consideration of cost allocation. The act contains a general requirement that MPUC consider competitiveness of customer rates as part of its review and then determine whether the plan will impose excessive costs on the utility's customers—a determination MPUC made explicit in its findings.

In making its determination that the plan is cost-effective and would not impose excessive costs on Xcel's customers, MPUC considered Xcel's provided information that the plan would result in a $.10 monthly increase to its residential customers in 2010. MPUC also considered MPCA's determination that the plan submitted by Xcel was the least costly alternative. Because MPUC considered information relevant to the competitiveness of customer rates, we cannot conclude that MPUC "entirely failed to consider" the competitiveness of customer rates. *See In re Petition of N. States Power Gas Util.,* 519 N.W.2d 921, 925 (Minn.App.1994) (finding that an agency order is not arbitrary or capricious when relevant information was considered, even if a more thorough explanation was desirable). MPUC's review and determination that the plan will not impose excessive costs on Xcel's customers was a reasonable exercise of its discretion and was not arbitrary or capricious.

SMMPA also argues that the act "contemplates that the MPUC will review, *contemporaneously,* both the public utility's emissions reduction plan *and* its emissions reduction rider." But the language of the statute is clear that filing an emissions-reduction rider is permissive. "A public utility required to file a mercury emissions-reduction plan under [the act] may also file for approval of emissions-reduction rate riders . . . ." Minn.Stat. § 216B.683, subd. 1(a). SMMPA's argument that MPUC acted arbitrarily or capriciously by not requiring a contemporaneous emissions-reduction rider therefore fails.

## DECISION

Because the Mercury Emissions Reduction Act specifically provides that a public utility that owns a dry-scrubbed unit at a qualifying facility must submit a mercury-emissions-reduction plan and because Xcel owns a dry-scrubbed unit at a qualifying facility, Xcel was required to submit a plan. Once submitted, MPUC's authority to review and order the implementation of the plan is explicit, and MPUC did not exceed its jurisdiction by approving and ordering the implementation of Xcel's plan for Sherco 3. MPUC considered the required factors in its review of the plan, and its order for implementation was not arbitrary or capricious.

**Affirmed.**