*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0253**

In the Matter of Minnesota Power's Petitions for
Approval of its Boswell Energy Center Unit 4
Environmental Retrofit Project and
Boswell 4 Environmental Improvement Rider.

**Filed November 3, 2014
Affirmed
Bjorkman, Judge**

Minnesota Public Utilities Commission
File No. E015/M-12-0920

Leigh K. Currie, Minnesota Center for Environmental Advocacy, St. Paul, Minnesota (for relators Minnesota Center for Environmental Advocacy, Izaak Walton League of America – Midwest Office, Fresh Energy, and Sierra Club)

Lori Swanson, Attorney General, Lisa A. Crum, Kathryn Fodness, Assistant Attorneys General, St. Paul, Minnesota (for respondent Minnesota Public Utilities Commission)

Michael C. Krikava, Elizabeth M. Brama, Briggs and Morgan, P.A., Minneapolis, Minnesota; and

David R. Moeller, Minnesota Power, Duluth, Minnesota (for respondent Minnesota Power)

Andrew Moratzka, Sarah Elizabeth Johnson Phillips, Stoel Rives LLP, Minneapolis, Minnesota (for respondent Large Power Intervenors)

Considered and decided by Smith, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Relators challenge respondent commission's approval of respondent power company's mercury-emissions-reduction plan, arguing that the commission erred by approving the plan without the required environmental analysis. We affirm.

## FACTS

Under the Mercury Emissions Reduction Act (MERA), Minn. Stat. §§ 216B.68-.688 (2012), a public utility that owns a large coal-fired power plant in Minnesota must prepare a plan for reducing the plant's mercury emissions and submit the plan to respondent Minnesota Public Utilities Commission (MPUC) for approval. There are six such existing plants, including respondent Minnesota Power's Boswell 4 facility.

On August 31, 2012, Minnesota Power filed a petition under Minn. Stat. § 216B.6851, seeking approval of its mercury-emissions-reduction plan for Boswell 4. Minnesota Power proposed a four-year project to retrofit Boswell 4 with a semi-dry flue-gas desulfurization system, fabric filter, and powder-activated carbon-injection system, asserting that these measures would reduce the plant's mercury emissions by 90%, reduce the output of multiple other pollutants, and reduce plant wastewater. Minnesota Power also detailed its process of identifying and evaluating various approaches to reducing emissions of mercury and other pollutants, from a range of carbon-injection retrofit options to retiring Boswell 4 in favor of a natural-gas replacement.

The Minnesota Pollution Control Agency (MPCA) reviewed Minnesota Power's retrofit plan. The MPCA determined that the plan presents a technically feasible, cost-

effective means of providing multiple environmental and public-health benefits, including 90% reduction in mercury emissions. The MPCA also observed that Minnesota Power described "alternatives to mercury controls that included replacing the entire unit with natural gas-fired generation," but it did not evaluate the environmental effects of a natural-gas replacement. The MPCA recommended that the MPUC approve the retrofit plan.

After two rounds of comments on the plan—including joint comments from relators Minnesota Center for Environmental Advocacy, Izaak Walton League of America–Midwest Office, Fresh Energy, and Sierra Club—and a public hearing, the MPUC approved Minnesota Power's retrofit plan. Relators petitioned for reconsideration, which the MPUC denied. Relators appeal.

## D E C I S I O N

The MPUC's approval of a mercury-emissions-reduction plan is subject to appeal under the Minnesota Administrative Procedure Act. *See* Minn. Stat. § 216B.52, subd. 1 (2012); *In re N. States Power Co.*, 775 N.W.2d 652, 655-56 (Minn. App. 2009). Under the act, we may affirm the MPUC's decision, remand the case for further proceedings, or reverse or modify the decision if the petitioner's substantial rights have been prejudiced because the findings, inferences, conclusions, or decision are affected by an error of law, unsupported by substantial evidence, or are arbitrary and capricious. Minn. Stat. § 14.69 (2012).

Relators argue that the MPUC committed legal error by approving Minnesota Power's retrofit plan in the absence of the full environmental assessment MERA requires.

3

This argument presents a question of statutory interpretation. While we defer to an administrative agency on matters within its field of expertise, we do not defer to an agency's statutory interpretation when statutory language "is clear and capable of understanding." *In re Annandale NPDES/SDS Permit Issuance*, 731 N.W.2d 502, 511, 513 (Minn. 2007). Instead, we effectuate the intent of the legislature by interpreting the text of the statute according to its plain language. *Minn. Transitions Charter Sch. v. Comm'r of Minn. Dep't of Educ.*, 844 N.W.2d 223, 227 (Minn. App. 2014), *review denied* (Minn. May 28, 2014). This includes consideration of the statute "as a whole," accounting for the context of the surrounding words and sentences. *In re Minn. Power*, 838 N.W.2d 747, 754 (Minn. 2013).

When a public utility submits a mercury-emissions-reduction plan for approval under MERA, the MPCA is required to "evaluate" the plan and submit its evaluation to the MPUC. Minn. Stat. § 216B.684. In doing so, the MPCA must

> (1) assess whether the utility's plan meets the requirements of [Minn. Stat. § 216B.6851], (2) evaluate the environmental and public health benefits of each option proposed or considered by the utility, including benefits associated with reductions in pollutants other than mercury, (3) assess the technical feasibility and cost-effectiveness of technologies proposed or considered by the utility for achieving mercury emissions reduction, and (4) advise the commission of the appropriateness of the utility's plan.

*Id.* The MPCA may "request additional information from the utility, especially with regard to alternative technologies or configurations applicable to the specific unit, and the estimated costs of those alternatives." *Id.*

4

Relators argue that the natural-gas-replacement alternative that Minnesota Power mentioned in its petition is an "option" that the MPCA was required to evaluate, and that the MPUC could not approve the retrofit plan without that evaluation. We disagree.

An "option" is something that is "available as a choice." *American Heritage Dictionary* 1238 (5th ed. 2011). The broader context of MERA defines whether a particular mercury-emissions-reduction measure is "available as a choice" and therefore requires MPCA assessment. MERA requires public utilities to reduce mercury emissions at existing coal-fired power plants. *See* Minn. Stat. § 216B.68, subd. 8 (defining a "targeted unit" as a "coal-fired electric generation unit"); *see also* Minn. Stat. §§ 216B.682, subd. 1(a) (requiring utility to file a plan "for mercury emissions reduction at each such unit"), .6851, subd. 3 (requiring plan "to achieve total mercury reduction at targeted and supplemental units"). It does not mention retiring or repowering those plants as a means of reducing their emissions of mercury or any other pollutant.[1] Instead, MERA expressly anticipates that these reductions will be accomplished by installing pollution-control equipment at those plants. *See* Minn. Stat. §§ 216B.68, subd. 7 (referring to "mercury-control equipment" being "installed at a targeted unit"), .686, subd. 1 (referring to "pollution control equipment" being "installed at facilities in

---

[1] The only mention in MERA of retiring or repowering coal-fired power plants is in the narrow provision (undisputedly applicable only to Minnesota Power) that permits a utility with two wet-scrubbed coal-fired power plants to stagger submission of mercury-emissions-reduction plans but requires multi-faceted annual reports on the second plant, including an assessment of whether state or federal pollution controls might warrant "retiring or repowering" that plant, rather than installing mercury-emissions-reduction technology. *See* Minn. Stat. § 216B.6851, subd. 5(b)(2)(iii).

Minnesota"). In short, the plain language of MERA indicates that the legislature intended to regulate, not replace, coal-fired power plants.[2]

Replacing a coal-fired plant with a facility that uses a cleaner fuel source might be a viable pollution-control measure. But it is an alternative to regulation under MERA, not an "option" in a mercury-emissions-reduction plan that the MPCA is required to evaluate. Accordingly, we conclude that the MPCA did not violate its statutory duty under section 216B.684 by declining to substantively assess the prospect of retiring and replacing Boswell 4 with a natural-gas facility.

Moreover, any deficiency occasioned by the MPCA's failure to evaluate the environmental effects of a natural-gas replacement is harmless. Under MERA, the MPUC's authority to do anything other than approve a utility's preferred plan is limited. The MPUC "shall approve a utility's mercury emissions-reduction plan that [the MPUC] reasonably expects will come closest to achieving" the 90 percent goal "in a manner that provides for increased environmental and public health benefits without imposing excessive costs on the utility's customers." Minn. Stat. § 216B.6851, subd. 6(b). Only if the MPUC is "unable" to approve the utility's preferred plan (the "90 percent reduction plan filed under subdivision 3") may it order the utility to implement some other plan. *Id.*

The MPCA thoroughly evaluated Minnesota Power's retrofit plan, including its environmental and public-health benefits, technical feasibility, and cost-effectiveness. The MPUC considered that evaluation and the substantial evidentiary record and

_____

[2] Indeed, if a utility were to retire its coal-fired power plant, it would no longer be subject to MERA.

6

determined that the retrofit plan achieves MERA's 90% goal, provides for increased environmental and public-health benefits, and does not impose excessive costs on Minnesota Power's customers. Relators do not challenge the sufficiency of the MPCA's review of the retrofit plan or any of the MPUC's findings as to its effectiveness, benefits, or costs. Under these circumstances, the MPUC was not only permitted but required to approve the retrofit plan. Accordingly, we conclude that the MPUC did not commit legal error by approving Minnesota Power's retrofit plan.

**Affirmed.**